Justice Breyer
delivered the opinion of the Court.
A federal court of appeals normally will not correct a legal error made in criminal trial court proceedings unless the defendant first brought the error to the trial court’s attention. See United States v. Olano, 507 U. S. 725, 731 (1993). But Federal Rule of Criminal Procedure 52(b), creating an exception to the normal rule, says that “[a] plain error that affects substantial rights may be considered even though it was not brought to the [trial] court’s attention.” (Emphasis added.) The Rule does not say explicitly, however, as of just what time the error must be “plain.” Must the lower court ruling *269 be plainly erroneous as of the time the lower court made the error? Or can an error still count as “plain” if the erroneous nature of that ruling is not “plain” until the time of appellate review?
The case before us concerns a District Court’s decision on a substantive legal question that was unsettled at the time the trial court acted, thus foreclosing the possibility that any error could have been “plain” then. Before the case was final and at the time of direct appellate review, however, the question had become settled in the defendant’s favor, making the trial court’s error “plain”—but not until that later time. In our view, as long as the error was plain as of that later time—the time of appellate. review—the error is “plain” within the meaning of the Rule. And the Court of Appeals “may . . . conside[r]” the error even though it was “not brought to the [trial] court’s attention.” Fed. Rule Crim. Proc. 52(b).
I
In early 2010, Armarcion Henderson, the petitioner, pleaded guilty in Federal District Court to a charge of being a felon in possession of a firearm. 646 F. 3d 223, 224 (CA5 2011). The District Judge accepted the plea and, in June 2010, he sentenced Henderson to an above-Guidelines prison term- of 60 months. Ibid. The judge entered the longer sentence to “try to help” Henderson by qualifying him for an in-prison drug rehabilitation program, a program that would provide “the treatment and the counseling that this defendant needs right now.” App. to Pet. for Cert. 35a, 40a.
Henderson’s counsel did not object. Indeed, the judge asked counsel if there was “any reason why that sentence as stated should not be imposed.” Id., at 41a. And counsel replied, “Procedurally, no.” Ibid. Subsequently, Henderson appealed, claiming, among other things, that the District Court had “plainly” erred in sentencing him to an above-Guidelines prison term solely for rehabilitative purposes. 646 F. 3d, at 224.
*270 In 2011, after Henderson was sentenced but before Henderson’s appeal was heard, this Court decided Tapia v. United States, 564 U. S. 319. There, we held that it is error for a court to “impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.” Id., at 335. Given Tapia, Henderson’s sentence was unlawful, and the District Court’s decision to impose that sentence was erroneous. But, since Henderson’s counsel had not objected in the trial court, the Court of Appeals could not correct the error unless Rule 52(b) applied. The Rule, however, applies only if the error was “plain.” The error was not plain before Tapia• it was plain after Tapia. Thus, the Fifth Circuit had to determine the temporal scope of Rule 52(b)’s words “plain error.”
The appeals court decided that Rule 52(b) did not give it the authority to correct the trial court’s error. 646 F. 3d, at 225. The appellate panel pointed out that, “[b]efore Tapia, there was a circuit split on whether a district court can consider a defendant’s rehabilitative needs to lengthen a sentence.” Ibid. The panel added that the Fifth Circuit had “not pronounced on the question” before Henderson was sentenced. Ibid. Thus, at the time when the District Court reached its decision, the law in that Circuit was unsettled. The Court of Appeals concluded that “Henderson cannot show that the error in his case was plain, . . . because an error is plain only if it was clear under current law at the time of trial.” Ibid, (internal quotation marks omitted).
The Fifth Circuit denied rehearing en banc by a divided vote. 665 F. 3d 160 (2011) (per curiam) (7 to 10). Henderson filed a petition for certiorari. And we granted the petition to resolve differences among the Circuits. Compare, e. g., United States v. Cordery, 656 F. 3d 1103, 1107 (CA10 2011) (time of review), with, e. g., United States v. Mouling, 557 F. 3d 658, 664 (CADC 2009) (time of error).
*271 II
A
Is the time for determining “plainness” the time when the error is committed, or can an error be “plain” if it is not plain until the time the error is reviewed? The question reflects a conflict between two important, here competing, legal principles. On the one hand, “ ‘[n]o procedural principle is more familiar to this Court than that a constitutional right,’ or a right of any other sort, ‘may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.’ ” Olano, 507 U. S., at 731 (quoting Yakus v. United States, 321 U. S. 414, 444 (1944)). This principle favors assessing plainness limited to the time the error was committed.
On the other hand, “[t]he general rule ... is that an appellate court must apply the law in effect at the time it renders its decision.” Thorpe v. Housing Authority of Durham, 393 U. S. 268, 281 (1969). See Ziffrin v. United States, 318 U. S. 73, 78 (1943). Indeed, Chief Justice Marshall wrote long ago:
“It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.” United States v. Schooner Peggy, 1 Cranch 103, 110 (1801).
This principle favors assessing plainness at the time of review.
*272 Rule 52(b) itself makes clear that the first principle is not absolute. Indeed, we have said that a “ ‘rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice.”’ Olano, supra, at 732 (quoting Hormel v. Helvering, 312 U. S. 552, 557 (1941); ellipsis in original). But neither is the second principle absolute. Even where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object unless an error not only “affect[s] substantial rights” but also “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” Olano, supra, at 732 (internal quotation marks omitted; brackets in original). Because the two principles here point in different directions and neither is absolute, we cannot decide this conflict simply by looking to one rather than to the other.
The text of Rule 52(b) does not resolve the problem. It does not say that a court of appeals may consider an “error that was plain”—language that would look to the past. Rather, it simply says that a court of appeals may consider “[a] plain error.” And that language leaves the temporal question open. But see infra, at 279.
Neither does precedent answer the temporal question—at least not directly. Olano is clearly relevant. There, we said that Rule 52(b) authorizes an appeals court to correct a forfeited error only if (1) there is “an error,” (2) the error is “plain,” and (3) the error “affectfs] substantial rights.” 507 U. S., at 732 (internal quotation marks omitted). Pointing out that Rule 52 “is permissive, not mandatory,” id., at 735, we added (4) that “the standard that should guide the exercise of remedial discretion under Rule 52(b)” is whether “the error ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings/” id., at 736 (quoting United States v. Atkinson, 297 U. S. 157, 160 (1936); brackets in orig *273 inal). At the same time, we said that “[w]e need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.” 507 U. S., at 734. That is the case now before us.
Johnson v. United States, 520 U. S. 461 (1997), is also relevant. We there considered a trial court’s decision that was clearly correct under Circuit law when made but which, by the time of review, had become plainly erroneous due to an intervening authoritative legal decision. We concluded that, “where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be ‘plain’ at the time of appellate consideration.” Id., at 468. As in Olano, however, we declined to decide whether that same rule should apply where the law is unsettled at the time of error but plain at the time of review. 520 U. S., at 467-468. As we have said, this is precisely the case now before us.
B
The text, precedents, and background principles do not directly dictate a result here. But prior precedent has helped to shape current law. And that precedent, read in light of those underlying principles, leads us to interpret Rule 52(b)’s phrase “plain error” as applying at the time of review. Given Johnson, a “time of error” interpretation would prove highly, and unfairly, anomalous.
Consider the lay of the post -Johnson legal land: No one doubts that an (unobjected to) error by a trial judge will ordinarily fall within Rule 52(b)’s word “plain” as long as the trial court’s decision was plainly incorrect at the time it was made. E. g., Olano, supra, at 734. That much is common ground. Johnson then adds that, at least in one circumstance, an (unobjected to) error by a trial judge will also fall within Rule 52(b)’s word “plain” even if the judge was not plainly incorrect at the time it was made. That is the circumstance where an error is “plain” even if the trial judge’s *274 decision was plainly correct at the time when it was made but subsequently becomes incorrect based on a change in law. 520 U. S., at 468. And, since by definition the trial judge did not commit plain error at the time of the ruling, Johnson explicitly rejects applying the words “plain error” as of the time when the trial judge acted. Instead, Johnson deems it “enough that an error be ‘plain’ at the time of appellate consideration” for that error to fall within Rule 52(b)’s category of “plain error.” Ibid.
But if the Rule’s words “plain error” cover both (1) trial court decisions that were plainly correct at the time when the judge made the decision and (2) trial court decisions that were plainly mcorrect at the time when the judge made the decision, then why should they not also cover (3) cases in the middle—i. e., where the law at the time of the trial judge’s decision was neither clearly correct nor incorrect, but unsettled?
To hold to the contrary would bring about unjustifiably different treatment of similarly situated individuals. Imagine three virtually identical defendants, each from a different circuit, each sentenced in January to identical long prison terms, and each given those long sentences for the same reason, namely, to obtain rehabilitative treatment. Imagine that none of them raises an objection. In June, the Supreme Court holds this form of sentencing unlawful. And, in December, each of the three different circuits considers the claim that the trial judge’s January-imposed prison term constituted a legal error. Imagine farther that in the first circuit the law in January made the trial court’s decision clearly lawful as of the time when the judge made it; in the second circuit, the law in January made the trial court’s decision clearly unlawful as of the time when the judge made it; and in the third circuit, the law in January was unsettled.
To apply Rule 52(b)’s words “plain error” as of the time of appellate review would treat all three defendants alike. It would permit all three to go on to argue to the appellate *275 court that the trial court error affected their “substantial rights” and “seriously affectfed] the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U. S., at 732 (internal quotation marks omitted). To interpret “plain error” differently, however, would treat these three virtually identical defendants differently, allowing only the first two defendants, but not the third defendant, potentially to qualify for Rule 52(b) relief. All three defendants suffered from legal error; all three failed to object; and all three would benefit from the new legal interpretation. What reason is there to give two of these three defendants the benefits of a new rule of law, but not the third? Cf. Schooner Peggy, 1 Cranch, at 110.
There is no practical ground for making this distinction. To the contrary, to distinguish and treat more harshly cases where a circuit’s law was unclear would simply promote arguments about whether the law of the circuit initially was unclear (rather than clearly settled one way or the other). And these arguments are likely to be particularly difficult to resolve where what is at issue is a matter of legal degree, not kind. To what extent, for example, did a prosecutor’s closing argument go too far down the road of prejudice? A “time of error” interpretation also would require courts of appeals to play a kind of temporal ping-pong, looking at the law that now is to decide whether “error” exists, looking at the law that then was to decide whether the error was “plain,” and looking at the circumstances that now are to decide whether the defendant has satisfied Olano’s third and fourth criteria. Thus, the “time of error” interpretation woüld make the appellate process yet more complex and time consuming.
We recognize, as the Solicitor General points out, that a “time of error” rule, even if confined to instances in which the law is uncertain, would in such cases provide an added incentive to counsel to call the lower court judge’s attention to the matter at a time when that judge could quickly take *276 remedial action. And, even if no remedy is offered, the lower court judge’s analysis may help the court of appeals to decide the legal question. See Brief for United States 30-32. See also Mouling, 557 F. 3d, at 664. We disagree with the Solicitor General, however, in that we also believe that, in the present context, any added incentive has little, if any, practical importance.
That is because counsel normally has other good reasons for calling a trial court’s attention to potential error—for example, it is normally to the advantage of counsel and his client to get the error speedily corrected. And, even where that is not so, counsel cannot rely upon the “plain error” rule to make up for a failure to object at trial. After all, that rule will help only if (1) the law changes in the defendant’s favor, (2) the change comes after trial but before the appeal is decided, (3) the error affected the defendant’s “substantial rights,” and (4) the error “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.” Olano, supra, at 732 (internal quotation marks omitted). If there is a lawyer who would deliberately forgo objection now because he perceives some slightly expanded chance to argue for “plain error” later, we suspect that, like the unicorn, he finds his home in the imagination, not the courtroom.
The upshot is that a “time of review” interpretation furthers the basic Schooner Peggy principle that “an appellate court must apply the law in effect at the time it renders its decision.” Thorpe, 393 U. S., at 281. It works little, if any, practical harm upon the competing administrative principle that insists that counsel call a potential error to the trial court’s attention. And, it is consistent with the basic purpose of Rule 52(b), namely, the creation of a fairness-based exception to the general requirement that an objection be made at trial. See supra, at 271-272.
At the same time, the competing “time of error” rule is out of step with our precedents, creates unfair and anoma *277 lous results, and works practical administrative harm. Thus, in the direct appeals of cases that are not yet final, we consider the “time of review” interpretation the better reading of Rule 52’s words “plain error.”
)—I 1—1 1—<
The Solicitor General makes several other important arguments, but they fail to lead us to a different conclusion. First, the Government argues that the purpose of plain-error review is to ensure “the integrity of the [trial] proceedings.” Brief for United States 33-34. In turn, the argument goes, appellate courts should consider only (1) errors that counsel called to the court’s attention and (2) errors that the trial court should have known' about regardless, namely, those that then were plain. Expanding on this theme, one Court of Appeals described plain error as “error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court’s error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant.” United States v. Turman, 122 F. 3d 1167, 1170 (CA9 1997) (citation omitted).
This approach, however, overlooks the way in which the plain-error rule—Rule 52(b)—restricts the appellate court’s authority to correct an error to those errors that would, in fact, seriously affect the fairness, integrity, or public reputation of judicial proceedings. Cf. United States v. Farrell, 672 F. 3d 27, 36-37 (CA1 2012) (considering the issue from this perspective). And the approach runs headlong into Johnson. The error in Johnson was not an error that the District Court should have known about at the time. It was the very opposite: The District Judge should have known that his ruling (at the time he made it) was not error; and perhaps not even clairvoyance could have led him to hold to the contrary. Cf. Khan v. State Oil Co., 93 F. 3d 1358, 1362- *278 1364 (CA7 1996) (registering disagreement with this Court’s precedent while following it nonetheless); State Oil Co. v. Khan, 522 U. S. 3, 20-22 (1997) (approving of that approach).
Rather, Johnson makes clear that plain-error review is not a grading system for trial judges. It has broader purposes, including in part allowing courts of appeals better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity. See Johnson, 520 U. S., at 467-468; Olano, 507 U. S., at 732.
Second, the Government fears that our holding will lead to too many claims of “plain error.” Brief for United States 26-28. After all, courts of appeals, not just the Supreme Court, clarify the law through their opinions. When a court of appeals does so, will not all defendants, including many who never objected in the court below, insist that the court of appeals now judge their cases according to the new rule? And will “plain error” in such cases not then disappear, leaving only simple “error” in its stead?
The answer to this claim is that a new rule of law, set forth by an appellate court, cannot automatically lead that court to consider all contrary determinations by trial courts plainly erroneous. Many such new rules, as we have pointed out, concern matters of degree, not kind. And a lower court ruling about such matters (say, the nature of a closing argument), even if now wrong (in light of the new appellate holding), is not necessarily plainly wrong. The Rule’s requirement that an error be “plain” means that lower court decisions that are questionable but not plainly wrong (at time of trial or at time of appeal) fall outside the Rule’s scope.
And there are other reasons for concluding that our holding will not open any “plain error” floodgates. As we have said, the Rule itself contains other screening criteria. The error must have affected the defendant’s substantial rights and it must have seriously affected the fairness, integrity, or public reputation of judicial proceedings. Olano, supra, at 732. When courts apply these latter criteria, the fact that *279 a defendant did not object, despite unsettled law, may well count against the grant of Rule 52(b) relief. Moreover, the problem here arises only when there is a new rule of law, when the law was previously, unsettled, and when the District Court reached a decision contrary to the subsequent rule. These limitations may well explain the absence of any account before us of “plain error” inundation in those Circuits that already follow the interpretation we now adopt. See, e. g., Farrell, supra, at 36-37; Cordery, 656 F. 3d, at 1107; United States v. Garcia, 587 F. 3d 509, 519-520 (CA2 2009); United States v. Ross, 77 F. 3d 1525, 1539 (CA7 1996).
Finally, the Government points out that Rule 52(b) is written mostly in the past tense. It says that a “plain error .. . may be considered even though it was not brought to the court’s attention.” (Emphasis added.) This use of the past tense, the Government argues, refers to a “plain error” that was not “brought to the court’s attention” back then, when the error occurred. And that linguistic fact, in turn, means that the error must have been plain at that time. Brief for United States 18-22.
Whatever the merits of this textual argument, however, Johnson forecloses it. The error at issue in that case was not even an error, let alone plain, at the time when the defendant might have “brought [it] to the court’s attention.” Nonetheless, we found the error to be “plain error.” We cannot square the Government’s textual argument with our holding in that case.
IV
For these reasons, we conclude that whether a legal question was settled or unsettled at the time of trial, “it is enough that an error be ‘plain’ at the time of appellate consideration” for “[t]he second part of the [four-part] Olano test [to be] satisfied.” Johnson, supra, at 468. The contrary judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.