[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14418

_____

D.C. Docket No. 2:09-cr-00077-JES-SPC-8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO PINEDA, a.k.a. Michaila,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 9, 2013)

Before DUBINA, JORDAN and BALDOCK,* Circuit Judges.

BALDOCK, Circuit Judge:

---

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

A federal jury convicted Defendant Roberto Pineda of two marijuana-related crimes, one a conspiracy count and the other a substantive count. Defendant now appeals his conviction on the conspiracy count. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

Sometime around 2004, Defendant became involved with an indoor marijuana growing operation run by Jose Diaz in the Fort Myers, Florida, area. He was recruited into the operation by Herman Torres, one of Diaz's supervisors. Defendant started as a caretaker at a grow house on 20th Avenue in Naples, Florida. The electricity at this house was billed to his name. Then in 2005, Defendant became caretaker at a house on Everglades Boulevard in Collier County. This house was purchased in the name of Veronica Torres, Herman Torres's sister. But the electricity was again billed to Defendant. Defendant worked at the Everglades Boulevard house for about a year, through five or six harvests, but left when the organization began to suspect the house was under surveillance. The organization resumed growing marijuana at the house in early 2008, with Defendant again acting as caretaker and Herman Torres as his supervisor. In the interim, Defendant completed a marijuana harvest at a grow house on Van Camp Street in North Port.

2

Once he returned to the Everglades Boulevard house, Defendant tried to avoid drawing attention to the house by twice taking the cut marijuana plants to the Van Camp house, where co-defendant Ivan Curbelo completed the processing. Defendant completed about five more marijuana harvests at the Everglades Boulevard house. In late September 2009, police executed search warrants at numerous grow houses linked to the organization. They found Defendant and his co-defendant Francisco Arevalo inside the Everglades Boulevard house. The house contained 165 growing marijuana plants. Officers also found mail and other documents that belonged to Defendant, in addition to mail addressed to Veronica Torres.

Diaz testified that Defendant had participated in 12 to 15 marijuana harvests. Diaz said he had met with Defendant 20 or 30 times over the course of the conspiracy. In 2008, a Drug Enforcement Administration (DEA) agent observed Defendant meet with co-defendant Herman Torres in a Walmart parking lot, after which Defendant went into the Walmart and returned with an envelope full of cash. On another occasion, an agent observed Defendant meet and converse with Diaz in the parking lot of an auto parts store. Defendant had PVC pipe in the back of his pickup during the meeting.

A grand jury charged Defendant with violations of the Controlled

3

Substances Act. The superseding indictment charged him with (1) conspiring to manufacture and possess with intent to distribute 1,000 or more marijuana plants and to distribute and possess with intent to distribute 100 or more kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), (b)(1)(B)(vii) and 846, and (2) manufacturing and possessing with intent to distribute 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). Defendant testified on his own behalf at trial, claiming he did not know Diaz was the head of a large drug trafficking organization. He testified that he had only met Diaz twice, that he had never been to any grow houses other than the Everglades Boulevard house, and that he had not even completed one harvest of marijuana. The petit jury nevertheless convicted Defendant on both counts. The district court sentenced Defendant to a term of 120 months in prison on each count, to be served concurrently.

## II.

On appeal, Defendant argues the evidence at trial varied from the indictment because it only proved his involvement in one of several smaller conspiracies rather than the large conspiracy charged in the indictment. "A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a

4

single conspiracy." United States v. Castro, 89 F.3d 1443, 1450 (11th Cir. 1996).

When confronted with a variance argument, we ask two questions, "[f]irst, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result." United States v. Chastain, 198 F.3d 1338, 1349 (11th Cir. 1999). This is, of course, merely another way of saying we review for harmless error. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

The Government, however, argues that we can review only for plain error because Defendant failed to raise this argument below.[1] The Government is correct that Defendant did not raise the variance argument when he moved for judgment of acquittal. But he *did* raise the argument in his Rule 33 motion for new trial. See Doc. 334 at 5 ("This material variance between the evidence introduced at trial and the allegations of the superseding indictment was substantially prejudicial to the defendant . . . ."). Although we have said a variance argument "in essence is one form of challenge to the sufficiency of the evidence," United States v. Jenkins, 779 F.2d 606, 616 (11th Cir. 1986), we have not required a defendant to raise a variance claim in a Rule 29 motion. Instead, we

---

[1] The distinction between plain and harmless error review lies in which party bears the burden of proof regarding prejudice. United States v. Olano, 507 U.S. 725, 734–35 (1993).

5

have considered a variance argument raised for the first time in a Rule 33 motion for new trial. United States v. Reed, 887 F.2d 1398, 1402 (11th Cir. 1989). The real question in determining our standard of review is whether Defendant "brought the error to the trial court's attention." Henderson v. United States, 133 S. Ct. 1121, 1124 (2013). Defendant did so here, and the district court denied Defendant's variance claim on the merits.[2] So we will review this argument under the ordinary harmless error standard.

"[T]he arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt." United States v. Moore, 525 F.3d 1033, 1042 (11th Cir. 2008). "To determine whether the jury could have found a single conspiracy, we consider: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." United States v. Seher, 562 F.3d 1344, 1366 (11th Cir. 2009) (quoting United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007)). "If a defendant's actions facilitated the endeavors of other coconspirators, or *facilitated the venture as a*

---

[2] The district court noted that Defendant's Rule 33 motion was untimely, but considered his arguments anyway because the Government failed to object to the motion's untimeliness.

*whole*, then a single conspiracy is shown." Id. (quoting United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004)).  "It is irrelevant that particular conspirators may not have known other conspirators or participated in every stage of the conspiracy; all that the government must prove to establish conspiracy liability is an agreement or common purpose to violate the law and intentional joining in this goal by the coconspirators." United States v. Alred, 144 F.3d 1405, 1415 (11th Cir. 1998).

Ample evidence supported the jury's finding that Defendant was a member of the charged conspiracy.  Diaz testified that Defendant participated in 12 to 15 marijuana harvests at three different grow houses run by the organization.  On two occasions, Defendant took harvested marijuana from one grow house to another.  Diaz testified that Herman Torres recruited Defendant into the organization and was responsible for paying him, but that the money ultimately came from Diaz.  DEA agents observed Defendant meeting with both Diaz and Herman Torres on two occasions prior to Defendant's arrest.  Police found Defendant and another man inside a house full of marijuana.  Although Veronica Torres owned the house and received mail at that address, Defendant set up the electricity in his name.  From this evidence, the jury could conclude Defendant was aware of Diaz's larger marijuana-growing operation.

Defendant responds by arguing that Diaz was not a credible witness, an argument that misses the point.  When determining whether a variance occurred, we "view the evidence in the light most favorable to the government," United States v. Brown, 587 F.3d 1082, 1092 (11th Cir. 2009), and cannot disturb the jury's credibility determinations unless the testimony is "incredible as a matter of law," United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009) (quoting United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997)).  Testimony is only incredible as a matter of law if it relates to "facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature."  Id. (quoting Calderon, 127 F.3d at 1325).  Diaz's testimony, combined with the other evidence in the case, allowed a reasonable jury to find Defendant guilty of the charged conspiracy.  Therefore, no material variance occurred.

AFFIRMED.