Sharon G. Lee, J., concurring.
 

 Christopher Minor was sentenced to serve additional time in prison for violations of the criminal gang offense statute, Tennessee Code Annotated section 40-35-121(b) (2014). While his case was on appeal, the Court of Criminal Appeals in
 
 State v. Bonds
 
 ,
 
 502 S.W.3d 118
 
 , 157 (Tenn. Crim. App. 2016), declared that a portion of the criminal gang offense statute was unconstitutional. Today, the Court vacates Mr. Minor's convictions for violating the criminal gang offense statute. It is only fair that Mr. Minor should not have to serve additional time in prison for violating a statute that an appellate court declared unconstitutional while his appeal was pending.
 

 Here, the Court reaches the right result, but does not go far enough. In the interest of fairness and justice, I would go a step further, as did the United States Supreme Court in
 
 Henderson v. United States
 
 ,
 
 568 U.S. 266
 
 ,
 
 133 S.Ct. 1121
 
 ,
 
 185 L.Ed.2d 85
 
 (2013), and hold that an appellate court, when determining whether a defendant is entitled to plain error relief, should apply the law in effect at the time of its review. A defendant's fate should not depend on whether the law was settled or unsettled at the time of trial.
 

 We should adopt the ruling in
 
 Henderson
 
 for a number of reasons. It is a well-reasoned decision and firmly grounded in longstanding principles of appellate jurisprudence. As the
 
 Henderson
 
 Court noted, as early as 1801, Chief Justice John Marshall wrote that appellate courts must apply the law in effect at the time of review, even if the law changes between the time of trial and appeal.
 

 Id.
 

 at 271
 
 ,
 
 133 S.Ct. 1121
 
 (quoting
 
 United States v. Schooner Peggy
 
 , 5 U.S. (1 Cranch) 103, 110,
 
 2 L.Ed. 49
 
 (1801) ).
 

 The
 
 Henderson
 
 ruling advances the fairness function of the plain error doctrine by treating similarly situated defendants the same. It simplifies appellate practice by sparing lawyers and judges the "temporal ping-pong" that results from focusing on the law at the time of trial-law that changes after trial and may be obsolete by the time of appeal.
 
 Id.
 
 at 273-74,
 
 133 S.Ct. 1121
 
 . By simplifying appellate processes, the
 
 Henderson
 
 approach is consistent with the overriding purpose of the Rules of Appellate Procedure in Tennessee.
 
 See
 
 Tenn. R. App. P. 1 (instructing that the appellate rules "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits").
 

 The
 
 Henderson
 
 ruling is consistent with our plain error doctrine, as reflected in the language of Tennessee Rule of Appellate Procedure 36(b). This Rule addresses itself to appellate courts and places no limitations on the general rule that appellate courts apply the law existing at the time of review. "When necessary to do substantial justice,
 
 an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.
 
 " Tenn. R. App. P. 36(b) (emphasis added). By not altering the generally applicable rule, Rule 36(b) contemplates that the question of whether a clear and unequivocal rule of law has been breached will be answered by reference to the law existing at the time of appeal.
 

 The
 
 Henderson
 
 approach does not incentivize sandbagging at trial because "it is normally to the advantage of counsel and his client to get the error speedily corrected."
 
 568 U.S. at 276
 
 ,
 
 133 S.Ct. 1121
 
 . Even assuming an attorney or a party would unwisely choose not to raise an issue at trial hoping to gain relief via the plain error doctrine, the criteria necessary to obtain such relief and the principle that
 appellate courts "sparingly exercise[ ]" their authority to grant such relief,
 
 State v. Bledsoe
 
 ,
 
 226 S.W.3d 349
 
 , 354 (Tenn. 2007) (quoting Tenn. R. App. P. 13(b) cmt.), are entirely sufficient to prevent sandbagging and to safeguard appellate review preservation requirements.
 

 The
 
 Henderson
 
 ruling neither threatens the integrity of trial proceedings nor casts aspersions on the performance of trial judges. As the
 
 Henderson
 
 Court emphasized, the plain error doctrine
 
 does not
 
 function (and never has been intended to function) as "a grading system for trial judges."
 
 568 U.S. at 278
 
 ,
 
 133 S.Ct. 1121
 
 . Rather, it serves the broader purpose of advancing fairness and judicial integrity.
 

 Id.
 

 The adoption of
 
 Henderson
 
 makes sense. Tennessee would join many other jurisdictions that have adopted this approach, some of which adopted it before the United States Supreme Court's ruling in
 
 Henderson. See
 

 Wills v. United States
 
 ,
 
 147 A.3d 761
 
 , 772 (D.C. 2016) ("We assess plainness in light of the state of the law at the time of appellate review, not the state of the law at the time of trial.");
 
 Lyman v. State
 
 ,
 
 301 Ga. 312
 
 ,
 
 800 S.E.2d 333
 
 , 338 (2017) (holding that when an appellate court conducts plain error review, it applies the law as of the time of the appellate court's review);
 
 State v. Maharaj
 
 ,
 
 131 Hawai'i 215
 
 ,
 
 317 P.3d 659
 
 , 661 (2013) (citing
 
 Henderson
 
 and explaining that courts should consult the law at the time of appeal);
 
 State v. Kelley
 
 ,
 
 855 N.W.2d 269
 
 , 277 (Minn. 2014) (holding that for purposes of applying the plain error doctrine, the court examines the law in existence at the time of appellate review, not the law in effect at the time of the trial court's error, to determine whether an error is plain);
 
 State v. Jury
 
 ,
 
 185 Or.App. 132
 
 ,
 
 57 P.3d 970
 
 , 973 (2002) (en banc) ("[W]e have consistently, albeit implicitly, defined 'plain error' by reference to the law existing at the time the appeal is decided.");
 
 State v. Marple
 
 ,
 
 197 W.Va. 47
 
 ,
 
 475 S.E.2d 47
 
 , 53 (1996) (holding that "plain error" is error that is clear and uncontroverted at the time of appeal).
 

 In
 
 Henderson
 
 , the Court of Appeals for the Fifth Circuit had not decided at the time of the defendant's sentencing hearing whether federal sentencing statutes authorized district courts to impose upward departure sentences to aid defendants in becoming eligible for rehabilitation programs, although other federal appellate courts had disagreed on the issue. Similarly, in this case, no Tennessee court had addressed the constitutionality of the criminal gang offense statute at the time of the defendant's trial and sentencing hearing, although a Florida court had declared a similar Florida statute unconstitutional.
 
 See
 

 State v. O.C.
 
 ,
 
 748 So.2d 945
 
 (Fla. 1999). In both
 
 Henderson
 
 and this case, the relevant issues were not definitively resolved for the first time until the defendants' cases were pending on appeal. Any other factual distinctions between this appeal and
 
 Henderson
 
 are not sufficient to justify declining to adopt
 
 Henderson
 
 .
 

 Adopting the
 
 Henderson
 
 approach would serve the interest of fairness to the parties, clarity in the law, and conservation of judicial resources. This Court asked the parties to brief and argue
 
 Henderson
 
 , and the parties did so. In four previous appeals, we declined to accept or reject
 
 Henderson
 

 . See
 

 State v. Perrier
 
 ,
 
 536 S.W.3d 388
 
 , 405-06 (Tenn. 2017) ;
 
 State v. Walls
 
 ,
 
 537 S.W.3d 892
 
 , 901 n.5 (Tenn. 2017) ;
 
 State v. Martin
 
 ,
 
 505 S.W.3d 492
 
 , 508 (Tenn. 2016) ;
 
 State v. Fayne
 
 ,
 
 451 S.W.3d 362
 
 , 372 n.6 (Tenn. 2014). It is time we decide this issue. We should not stop short.
 

 For all these reasons, I would adopt as the law in Tennessee the United States Supreme Court's ruling in
 
 Henderson v. United States
 
 . I otherwise concur in the Court's analysis and in the result reached.