# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

### Ronald A. NENNI
### Electronics Technician Second Class (E-5), U.S. Coast Guard

**CGCMG 0395**
**Docket No. 1494**

**10 October 2024**

General court-martial sentence adjudged on 13 May 2023.

| | |
|---|---|
| Military Judge: | CDR Emily P. Reuter, USCG |
| Appellate Defense Counsel: | LCDR Thadeus J. Pope, USCG |
| Appellate Government Counsel: | LT Tae W. Chon, USCG |
| Special Victim's Counsel: | Mr. Paul T. Markland |

## BEFORE
## McCLELLAND, BRUBAKER & PELL
Appellate Military Judges

BRUBAKER, Judge:

A general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ). Appellant was sentenced to reduction to E-1, forfeiture of $1,278 per month for six months, and a bad-conduct discharge. Judgment was entered accordingly.

Appellant raises two assignments of error: (1) His due process right to timely appellate review was violated; and (2) The convening authorities violated his equal protection right when they solicited, received, and presumptively considered panel members' race and gender in selecting who would serve on appellant's court-martial.

We conclude there is no prejudicial error and affirm.

**United States v. Ronald A. NENNI, No. 1494 (C. G. Ct. Crim. App. 2024)**

**Post-Trial Delay**

Appellant asserts he is entitled to relief because 200 days elapsed from the completion of trial until his case was docketed with this Court. We disagree.

We evaluate whether post-trial delay violates the Constitution's Due Process Clause[1] using a three-tiered analysis. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). First, we determine whether the post-trial delay is facially unreasonable. *Id.* at 136. Post-trial delay is presumed to be unreasonable when: (1) the record of trial is not docketed with this Court within 150 days of the completion of trial; or (2) we do not render a decision within 18 months of docketing. *United States v. Tucker*, 82 M.J. 553, 570 (C.G. Ct. Crim. App. 2022).

Second, if there is facially unreasonable delay, we conduct a full analysis of whether a due process violation occurred by weighing the "*Barker*" factors: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is dispositive, and absence of a given factor does not prevent finding a due process violation." *United States v. Anderson*, 82 M.J. 82, 86 (C.A.A.F. 2022).

Third, and finally, if we conclude there was a due process violation, we must grant relief unless we are convinced beyond a reasonable doubt that the error is harmless. *United States v. Toohey*, 63 M.J. 353, 363 (C.A.A.F. 2006).

Here, because more than 150 days elapsed from the conclusion of trial to docketing, we weigh the *Barker* factors to determine whether a due process violation occurred.

*1. Length of delay*

The length of the delay—200 days—triggers full review and weighs in Appellant's favor, but only slightly: courts finding a due process violation are generally dealing with far greater delay. *See, e.g., Toohey*, 63 M.J. at 357 (addressing delay of 790 days from completion of trial to docketing and 1,450 days from docketing to decision).

---

[1] U.S. Const. amend. V.

*2. Reasons for the delay*

The Government offers three affidavits and a detailed chronology and explanation of the reasons for the delay. It concedes that some of the delay is attributable to mistakes made while obtaining a verbatim transcript and compiling the record. This led to the military judge not receiving the record for review and verification until 164 days from trial, already 14 days beyond the *Tucker* standard. This included unnecessary delay, most notably 62 days from sentencing to getting a contract approved and transmitted so that work on a transcript could finally begin.

As the Government also points out, however, when the military judge received the record, both she and the court reporter responsible for compiling the record were in the midst of a complex, 29-day contested court-martial. The military judge nevertheless worked diligently with the court reporter to identify and correct errors, eventually verifying a complete record 198 days after trial.

Given all the circumstances, we do not view the delay as onerous. The record includes a 1,684-page transcript, with sealed portions, and a total of 184 exhibits, some of which are sealed. Post-trial processing must balance quality and attention to detail with speediness. Although there were, undoubtedly, missteps that slowed the process, we acknowledge the efforts of the military judge, court reporter, and other Government personnel to identify and address errors to ensure delivery of a complete, quality record to this Court.

*3. Assertion of right to timely review and appeal*

Appellant asserted his right to timely review and appeal, which weighs in his favor.

*4. Prejudice*

"Prejudice due to post-trial delay is assessed in light of the potential impact on the appellate process." *United States v. Anderson*, 82 M.J. 82, 87 (C.A.A.F. 2022). In assessing prejudice, we consider three interests: "(1) prevention of oppressive incarceration pending appeal; (2) anxiety and concern; and (3) limiting the possibility that a convicted person's grounds for appeal and defenses, in case of retrial, might be impaired." *Id.*

The first and third interests are not at issue. Appellant was not sentenced to confinement, so there is no oppressive incarceration here, and there is no basis to conclude that the delay impaired any grounds for appeal or defenses in the event of a retrial.

Appellant attests, rather, to anxiety and concern. First, he asserts, "The protracted delay in the resolution of my post-trial process has placed me in a state of professional and personal paralysis, marked by profound uncertainties and significant setbacks." Appellant's Mot. to Attach, App'x (C) at 1. This, however, does not rise to the level of constitutionally cognizable anxiety arising from excessive delay. "[W]e require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Anderson*, 82 M.J. at 87 (quoting *Toohey*, 63 M.J. at 361). Appellant has not done so. His uncertainty and setbacks are indistinguishable from those experienced by any military member awaiting the appeal of a criminal conviction.

Second, Appellant asserts that the lack of a discharge certificate has hampered his ability to secure suitable employment. This claim, however, is uncorroborated and speculative. *See United States v. Bush*, 68 M.J. 96, 101 (determining there was no prejudice under the fourth *Barker* factor because the appellant's assertion that post-trial delay led to a lost job opportunity was uncorroborated).

We discern no prejudice from the delay. This weighs heavily in our analysis. "[W]here there is no finding of *Barker* prejudice, we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Fifty days of delay beyond the *Tucker* standard to correct errors in a relatively large record prior to forwarding it to an appellate court is certainly not so egregious. Having weighed all the factors, we conclude there was no due process violation.

Even absent a due process violation, we may grant appropriate relief if an appellant demonstrates "excessive delay in the processing of the court-martial after the judgment was

entered into the record . . . ." Art. 66(d)(2), UCMJ; *see also United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). We decline to do so. The delay in this case was relatively minor, resulted in no discernable prejudice, and, even if not entirely justified, has been thoroughly explained.

**Panel Selection Process**

Citing the recently decided case of *United States v. Jeter*, 84 M.J. 68 (C.A.A.F. 2023), Appellant asserts that the convening authorities violated his equal protection rights by soliciting, receiving, and presumptively considering panel members' race and gender when selecting who would serve on his court-martial. Appellant did not raise this issue at trial. We held in *United States v. Shafran* that, under these circumstances, we review for plain error. 84 M.J. 548, 567 (C.G. Ct. Crim. App. 2024), *rev. granted on other grounds*, __ M.J. __. To prevail under this standard, an appellant must establish that: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right. *United States v. King*, 83 M.J. 115, 123 (C.A.A.F. 2023). Appellant disputes our holding in *Shafran*. He contends that when an objection is based on *Jeter*, and the court-martial concluded before *Jeter* was decided, the appropriate standard of review is de novo, not plain error.

We agree that *Jeter* represents an intervening change in the law. At the time of his court-martial, military courts did "not presume improper motives from inclusion of racial . . . identifiers on lists of nominees for court-martial duty." *United States v. Loving*, 41 M.J. 213, 285 (C.A.A.F. 1994). In fact, courts sanctioned the consideration of race, provided it was used to include, not exclude, minorities to the accused's benefit. *United States v. Crawford*, 15 C.M.A. 31, 35 C.M.R. 3 (1964). After Appellant's court-martial concluded, the United States Court of Appeals for the Armed Forces held that *Crawford* was no longer good law because it had been abrogated by *Batson v. Kentucky*, 476 U.S. 79, 87 (1986). Now, "whenever an accused makes a prima facie showing that race played a role in the panel selection process at his court-martial"—whether to the detriment or benefit of the accused—the court will presume the panel was not properly constituted and reverse unless the Government can rebut the presumption. *Jeter*, 84 M.J. at 70. Contrary to *Loving*, the court criticized the practice of using racial identifiers in questionnaires, stating that it "makes it easier for those to discriminate who are of a mind to discriminate." *Id.* at 73 (quoting *Avery v. Georgia,* 345 U.S. 559, 562 (1953)). The court

concluded that the circumstances of that case—an African American accused; a convening order and amendments with names drawn from an "available pool of member questionnaires" that included racial identifiers; that "two African American members on the original convening order were subsequently removed pursuant to the first amendment to the convening order"; and that "three other courts-martial with African American accuseds were convened by this convening authority before all-white panel members"—established a prima facie case that race played a role in the panel selection process. *Id*. at 73–74. Because the Government was unable to rebut this presumption, the court reversed the lower court and set aside the findings and sentence. *Id.* at 74–75.

Still, the change in the law after Appellant's court-martial does not permit us to ignore that, unlike Jeter, Appellant did not preserve this issue at trial. Even when there has been an intervening change in the law, absent an objection at trial, military courts continue to review for plain error. *See, e.g., United States v. Humphries*, 71 M.J. 209, 211, 214 (C.A.A.F. 2012) (applying plain error standard even though "the law at the time of trial was settled and clearly contrary."); *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008). Civilian federal courts apply the same rule. *See, e.g., Henderson v. United States*, 568 U.S. 266, 276–77 (2013); *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004) (applying the plain error test "even where an intervening change in the law is the source of the error" and despite "the fact that there was no reason . . . to object" at trial).

The benefit an accused gets from an intervening change in the law is not avoidance of the plain error standard. It is, instead, that the accused need only show error that "is obvious at the time of appeal, not . . . at the time of the court-martial." *Harcrow*, 66 M.J. at 159 (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). In other words, the question in this case is not whether there was error in the panel selection process that was clear or obvious to the military judge and litigants before *Jeter* was decided. Rather, the question is whether there was error that is clear or obvious to us now, applying the law as explained in *Jeter*. In this respect, we adhere to our holding in *Shafran* and review for plain error.

That said, it is not clear or obvious to us that there was error in the panel selection process under *Jeter*. First, as we noted in *Shafran*, *Jeter* addressed racial, not gender, identifiers in questionnaires submitted for the convening authority's consideration. "A plain error setting is not the vehicle for us to extend *Jeter*'s holding, and it is not plain or obvious that the use of gender identifiers in materials available to the convening authority establishes a presumed equal protection violation." *Shafran*, 84 M.J. at 568.

Second, any alleged error due to convening authorities being conscious of race in the initial selection and modification of the venire of members was later cured. After Appellant filed a pretrial motion alleging improper selection of members (for reasons unrelated to race or gender), the convening authority sua sponte relieved all previously detailed members and detailed new ones. App. Ex. CXXXVI at 10. At the time he did so, the new nominees had not yet filled out questionnaires, and he considered only lists of nominated members and an alpha roster of active duty members in the area. The alpha roster provided to the convening authority does not appear in the record, and there is no indication that it included racial identifiers. In fact, the trial defense counsel complained about the lack of questionnaires, arguing that the lists of nominees and alpha roster was "the totality of the information that was provided from the [staff judge advocate] to the convening authority to then make the selection based upon Article 25 criteria." R. at 272. In short, there is no evidence that the convening authority had or considered information about race when selecting the venire of members who decided the case. Thus, Appellant has not established that there was error.

Based on this record, plain error has not been established with respect to whether race or gender played a role in the selection of the members who decided Appellant's case. Accordingly, we decline to grant relief.

### Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge PELL concur.



For the Court,


Sarah P. Valdes
Clerk of the Court