[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10673

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FRANK H. BYNES, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:18-cr-00153-LGW-CLR-1

_____

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

This appeal is back before this Court on remand from the United States Supreme Court. On October 10, 2019, a jury found Frank Bynes, Jr., guilty of 13 counts of knowingly and intentionally dispensing controlled substances by issuing prescriptions not for legitimate medical purposes and not in the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1), and 3 counts of healthcare fraud under 18 U.S.C. § 1347. The district court sentenced Bynes to a total term of 240 months' imprisonment. Bynes appealed his sentence and this Court affirmed his convictions and sentences. Bynes then filed a petition for writ of certiorari. The Supreme Court granted Bynes's petition, vacated his judgment, and remanded the case to this Court for further consideration in light of *Xiulu Ruan v. United States (Ruan II)*, 597 U.S. 450 (2022).

## I.

Frank Bynes, Jr., a veteran of the Air Force, is a doctor in internal medicine who graduated from medical school in 1977. In 2008, he joined Curtis Cooper Health Care in Savannah, Georgia, where he took care of indigent patients. To earn additional income, Bynes also began treating indigent patients at a clinic named "Measurements, Balance & Attitude" on a part-time basis. In February 2017, Bynes left those roles and began seeing patients at the "Georgia Laboratory Diagnostics" clinic. On September 21, 2017, the Drug Enforcement Agency ("DEA") executed a search warrant

on Georgia Laboratory Diagnostics and raided Bynes's office. Bynes surrendered his medical license that same day.

On June 6, 2018, the United States filed a 48-count indictment against Bynes in the Southern District of Georgia. The government filed a 17-count superseding indictment on April 3, 2019. Counts 1 through 14 of the superseding indictment charged that, between August 17, 2015, and September 7, 2017, Bynes knowingly and intentionally dispensed controlled substances by issuing prescriptions not for a legitimate medical purpose and not in the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1). Counts 15 through 17 alleged that Bynes committed healthcare fraud in violation of 18 U.S.C. § 1347 by submitting false and fraudulent claims to Medicare, Tricare, and Medicaid, including claims for controlled substances that Bynes knew "were not issued for a legitimate medical purpose by an authorized individual practitioner acting in the usual course of professional practice and, therefore, were ineligible for reimbursement."

Before trial, the parties agreed on proposed jury instructions and filed their proposed instructions jointly. The parties jointly requested the following instruction for Counts 1 through 14, which was later given to the jury:

> A physician may be convicted of a violation of Title 21, United States Code, Section 841(a)(1) when he dispenses a Controlled Substance either outside the usual course of professional practice or without a legitimate medical purpose.

Whether the Defendant acted outside the usual course of professional practice is to be judged objectively by reference to standards of medical practice generally recognized and accepted in the United States. Therefore, whether the Defendant had a good faith belief that he dispensed a controlled substance in the usual course of his professional practice is irrelevant.

However, whether the Defendant acted without a legitimate medical purpose depends on the Defendant's subjective belief about whether he was dispensing the controlled substance for a legitimate medical purpose. Therefore, in order for the Government to establish that the Defendant was acting without legitimate medical purpose, the Government must prove beyond a reasonable doubt that the Defendant did not subjectively believe that he was dispensing the controlled substance for a legitimate medical purpose. Good faith in this context means good intentions and the honest exercise of good professional judgment as to a patient's medical needs. Good faith connotes an observance of conduct in accordance with what the physician believes to be proper medical practice. In determining whether the Defendant acted in good faith in the course of medical practice, you may consider all of the evidence in the case that relates to that conduct.

The case proceeded to trial, and Bynes, the defense's sole witness, testified for nearly a day. The jury found Bynes guilty of all counts except Count 11. The district court sentenced Bynes to

a term of 240 months' imprisonment as to each of Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14, and to terms of 120 months as to each of Counts 15, 16, and 17, all to be served concurrently for a total term of 240 months' imprisonment. The district court also ordered Bynes to pay $615,145.06 in restitution.

Following an appeal, a panel of this Court affirmed Bynes's convictions and sentences based on an independent examination of the entire record. Bynes filed a petition for writ of certiorari with the Supreme Court, which the Court granted in light of its recent decision in *Ruan II*. The Supreme Court vacated this Court's judgment and remanded the case for further consideration in light of *Ruan II*.

This appeal follows.

## II.

When a party does not object to a jury instruction before the district court, this Court will review that instruction for plain error. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). Plain error occurs in a criminal appeal if (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Duldulao*, 87 F.4th 1239, 1251–52 (11th Cir. 2023) (quoting *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010)).

"Error is plain when, at the time of appellate review, it is obvious or clear under current law, even if the law at the time of the trial was settled to the contrary." *United States v. Jimenez*, 564

F.3d 1280, 1286 n.2 (11th Cir. 2009) (internal quotations omitted); *see also Henderson v. United States*, 568 U.S. 266, 279 (2013) (explaining that regardless of "whether a legal question was settled or unsettled at the time of trial," the second prong of the plain-error test is satisfied if an error is plain "at the time of appellate consideration" (internal quotations omitted)).

## III.

On appeal, Bynes presents one argument—whether the district court committed plain error when it instructed the jury on the requirements for a conviction under 21 U.S.C. § 841(a)(1). Specifically, Bynes argues that the district court plainly erred when it told the jury that "[w]hether the defendant acted outside the usual course of professional practice is to be judged objectively by reference to standards of medical practice generally recognized and accepted in the United States." While Bynes acknowledges that he did not object to this instruction in the district court, he contends that the instruction was nevertheless erroneous in light of the Supreme Court's ruling in *Ruan II*, which was decided after Bynes's trial and conviction (and our initial affirmance). And he argues that the district court's erroneous instruction prejudiced his substantial rights because, given the evidence of his subjective belief presented at trial, there is a "reasonable probability that the jury would have found [him] not guilty of the Section 841(a)(1) charges." In addition, "because the Government's theory of health care fraud depended upon Section 841 convictions under Counts 2, 6, and 8," Bynes argues, "there is also a reasonable probability that a jury would have found [him] not guilty of the health care fraud charges

asserted pursuant to 18 U.S.C. § 1347 in Counts 15 through 17." Bynes, therefore, asks us to vacate all of his convictions.

Under 21 U.S.C. § 841(a)(1), it is a federal crime for any person, "[e]xcept as authorized," to "knowingly or intentionally . . . manufacture, distribute, or dispense" a controlled substance. Registered doctors may, of course, prescribe controlled substances to their patients. *Ruan II*, 597 U.S. at 454. However, a doctor violates § 841(a)(1) "when he distributes or dispenses a controlled substance either not for a legitimate medical purpose or outside the usual course of professional practice." *Duldulao*, 87 F.4th at 1251 (citing 21 C.F.R. § 1306.04(a)).

In *Ruan II*, the Supreme Court held that the *mens rea* requirement of § 841(a)(1)—"knowingly or intentionally"—applies equally to the "except as authorized" portion of the provision, meaning that "the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." 597 U.S. at 454. The Supreme Court also rejected the United States's argument that a doctor can violate § 841(a)(1) when he makes "no *objectively* reasonable attempt to conform his conduct to something that his fellow doctors would view as medical care." *Id*. at 465 (emphasis added). This standard, the Court explained, would improperly "turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself or herself." *Id*. at 465.

On remand, this Court ruled that "what matters" under *Ruan II* "is the defendant's subjective *mens rea*." *United States v. Xiulu Ruan (Ruan III)*, 56 F.4th 1291, 1296 (11th Cir. 2023). Relevant to this appeal, this Court held that a defendant's subjective intent also governs the "usual course of professional practice prong" of 21 C.F.R. § 1306.04(a), which is an implementing regulation of the statute. *Id*. at 1297. We reaffirmed that ruling in *Heaton*, where we held that a jury instruction was erroneous under *Ruan II* because it allowed the jury to convict the defendant doctor without considering whether he subjectively knew that his prescriptions had been issued outside the usual course of professional practice. *See United States v. Heaton*, 59 F.4th 1226, 1241–44 (11th Cir. 2023). In other words, to obtain a conviction under § 841(a)(1), the government must prove that the defendant "subjectively knew that his conduct fell outside the usual course of professional conduct." *Id*. at 1247.

Bynes argues—and the government agrees—that the district court's § 841 jury instruction was plain error. Remember, the district court instructed the jury that "[w]hether the defendant acted outside the usual course of professional practice is to be judged objectively." The United States concedes that "[t]hat instruction was erroneous" under *Ruan II*, *Ruan III*, and *Heaton*. "Moreover, the error was obvious because Supreme Court precedent establishes it." We agree: Our post-*Ruan-II* precedents hold that an instruction telling the jury that the "usual course of professional practice" prong must be evaluated using an objective standard is plainly erroneous under *Ruan II*. *See Ruan III*, 56 F.4th at 1297; *Heaton*, 59 F.4th at 1241.

The only question, then, is whether Bynes can meet his burden to show a reasonable probability that, having been given the correct instruction, the jury would have acquitted him. Under the plain-error test, did the district court's plain error affect Bynes's substantial rights in a manner that seriously affected the fairness, integrity, or public reputation of judicial proceedings? *Duldulao*, 87 F.4th at 1251–52.

For an error to have affected a defendant's substantial rights, it "almost always requires that the error 'must have affected the outcome of the district court proceedings.'" *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) (quoting *United States v. Cotton*, 535 U.S. 625, 632 (2002)). "This means that to establish prejudice on plain error, the defendant must show there is a reasonable probability that, but for the error, a different outcome would have occurred; and a reasonable probability is a probability 'sufficient to undermine confidence in the outcome.'" *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). The defendant bears the burden of showing prejudice, and this burden is a high one. *Rodriguez*, 398 F.3d at 1299. In the context of a jury instruction, a defendant seeking to show that an instructional error affected his substantial rights "must show that the error was *probably responsible* for an incorrect verdict." *United States v. Iriele*, 977 F.3d 1155, 1179 (11th Cir. 2020) (emphasis added & internal quotations omitted).

Here, we conclude that Bynes has not met his burden under the third prong of the plain-error test because he has not shown

that the outcome would have been different had the district court instructed the jury to evaluate the "usual course of professional practice" prong on a subjective standard rather than an objective standard. In *Ruan II*, the Supreme Court held that although the "except as authorized" portion § 841(a)(1) turns on a defendant's subjective intent, the government can still "prove knowledge of a lack of authorization through circumstantial evidence." *Ruan II*, 597 U.S. at 467. For example, in *Heaton*, this Court held that there was "no basis in th[e] trial record for concluding that the jury would have acquitted Heaton had it been properly instructed," 59 F.4th at 1244–45, because the government had "presented overwhelming evidence that Heaton subjectively knew his conduct fell outside the usual course of his professional practice," *id*. at 1242. For example, testimony at trial revealed that Heaton regularly failed to obtain prior medical records relating to pain complaints, did not conduct credible physical examinations, and did not properly document the prescriptions that he issued to patients. *Id*. at 1243. Heaton also prescribed medication to a patient with whom he was having a sexual relationship. *Id*. In light of this evidence, this Court found no reason to conclude that the jury would have acquitted Heaton had it been properly instructed. *Id*. at 1244–45.

So too here. At trial, the government presented strong circumstantial evidence that Bynes subjectively knew that his prescriptions were issued outside the usual norms of professional conduct. For example, Robert Gibbons, who works for the Office of the Inspector General for the U.S. Department of Health and

Human Services, testified that out of 14,879 physicians who filled prescriptions under Medicaid Part D between September 30, 2015, and September 30, 2017, Bynes filled *the most* oxycodone prescriptions on the same day as an alprazolam or Xanax of any of those doctors. For comparison, more than 12,000 of those 14,879 doctors *never* filled a prescription of oxycodone and alprazolam on the same day. The government also provided evidence that Bynes prescribed astronomical, abnormal amounts of oxycodone in the relevant time period. Special Agent Troy Smith testified that during the month of August 2017, Bynes prescribed 6,600 dosage units of oxycodone from just one pharmacy, which was "more oxycodone than the next 41 prescribers combined." Similarly, at another pharmacy that same month, Bynes prescribed a staggering 10,680 dosage units of oxycodone, while the next highest prescriber filled only 1,230 units. At that pharmacy too, Bynes "prescribed more oxycodone than the next 38 individual practitioners" combined. One nurse who worked with Bynes stated that Bynes's patients looked "strung out" and "disheveled," and he described how Bynes "would stay late" because "most of the patients" would leave enraged if they could not get pain medication.

Additionally, the government's expert witness on pain management, Dr. Gene Kennedy, reviewed the files for each of the patients named in Counts 1 through 14 of the superseding indictment and testified that the medications prescribed by Bynes were "provided outside the course of acceptable medical practice" and "were not for legitimate medical purpose." He came to this conclusion in part because Bynes was having sex with his patients. According to

Dr. Kennedy, Georgia prohibits a doctor from having sexual contact with a patient because it "destroys the doctor's objectivity," and "in cases with scheduled medication, . . . it's difficult to ever demonstrate that scheduled medications are not being prescribed specifically in pursuit of a sexual relationship." Dr. Kennedy also testified that Bynes issued prescriptions without checking pharmacy reports and without obtaining drug screens or medical records from patients.

In sum, the government presented more than enough circumstantial evidence at trial to prove to the jury that Bynes knew that his prescriptions were outside the usual course of professional practice. Even so, the burden of persuasion is not on the government, and Bynes has failed to prove that the jury would have come out any differently had the jury members been instructed to consider the "within the usual course of professional practice" prong using a subjective standard. In light of all the circumstantial evidence suggesting that Bynes was aware that his operation was abnormal in the course of professional practice, we conclude that he has not shown a reasonable probability that the incorrect *Ruan II* instruction was "probably responsible" for his guilty verdicts. *Iriele*, 977 F.3d at 1179 (internal quotations omitted).[1]

_____

[1] In its brief, the government initially argued that Bynes could not challenge his convictions based on an erroneous jury instruction because Bynes "requested that exact instruction" at trial and thus "invited the error." This Court has since rejected that argument in *Duldulao*, 87 F.4th 1239, which the government acknowledges in a letter of supplemental authority. Because the

23-11619          Opinion of the Court                    13

We thus affirm Bynes's convictions and sentence.

**AFFIRMED.**

---

government acknowledges that this argument was rejected by *Duldulao*, we need not consider it here.