# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 23, 2017       Decided November 28, 2017

No. 13-3010

UNITED STATES OF AMERICA,
APPELLEE

v.

KAMAL KING-GORE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00023-1)

———

*A. J. Kramer*, Federal Public Defender, argued the cause for appellant. With him on the briefs was *Rosanna M. Taormina*, Assistant Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Anne Y. Park*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Elizabeth Trosman*, and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  On September 19, 2012, Kamal King-Gore pleaded guilty to distribution of more than 28 grams of cocaine in violation of 21 U.S.C. § 841(a), (b)(1)(B)(iii).  Shortly thereafter, he was sentenced to prison for 162 months and supervised release for 48 months.  He appeals that sentence.

Among King-Gore's challenges to the sentence, we need discuss only one: the government's breach of its agreement with King-Gore not to use against him any incriminating statements he provided during a confidential debriefing session.  At sentencing, the prosecutor breached the agreement by relaying to the court information derived from the debriefing, notably information portraying King-Gore as a wholesale drug trafficker.  The government acknowledges that transmittal of this information breached the agreement, but argues that the breach did not prejudice King-Gore.  The district court judge, it says, would have imposed the same sentence absent the breach.  Because we believe that there is at least a reasonable likelihood that King-Gore would have received a lower sentence in a proceeding untainted by the government's violation, we vacate the sentence and remand for resentencing.

\* \* \*

On June 10, 2010, King-Gore sold 60.6 grams of cocaine base to a confidential informant in exchange for $2,350.  During the transaction, King-Gore offered to sell the informant larger amounts of cocaine and to set up other deals, including for PCP, though the record offers us no detail to quantify "larger."  Twenty months later, he was arrested for the June 10 sale and was found to have, on his person and in his car and home, an additional 11.8 grams in cocaine base, 30.3 grams in cocaine hydrochloride, and over $1,500 in cash.

This was not King-Gore's first run-in with the law. He was arrested on April 14, 2002, with $500 worth of ecstasy and cocaine, and again a month later, with 12 grams of cocaine, eight ecstasy tablets, and 66 grams of crack cocaine. For the former, he was sentenced in Superior Court for the District of Columbia to two years; for the latter, he was sentenced in federal district court in West Virginia to 84 months in prison (later reduced to 71 months). King-Gore appears to have been in custody by virtue of these arrests and the resulting sentences from May 2002 to March 2010. Three months after his release, he committed the offense at issue.

After being arrested and indicted for the present offense, King-Gore met with the government in a voluntary, off-the-record debriefing. The government promised that "no statements made by or other information provided by" King-Gore would "be used directly against [him] in any criminal proceeding." The agreement allowed certain exceptions, but the parties agree that none of them is relevant.

After King-Gore pleaded guilty, the district court judge found that the career offender guideline provision applied and determined that the proper guidelines range was 188 to 235 months. The court imposed a 162-month sentence with four years of supervised release.

\* \* \*

Because King-Gore raises his objection to the government's disclosure for the first time on appeal, the plain error standard of review applies. Fed. R. Crim. P. 52(b). It requires that we find (1) an error, (2) that is clear or obvious, (3) that affected the outcome of the district court proceedings, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

At sentencing, the government recommended a 188-month sentence—the low point on the applicable guidelines range. But its language in urging that sentence is what defendant claims, and the government acknowledges, violated the agreement governing the debriefing:

> The defendant wasn't a retail level narcotics trafficker. We know by his own admission that he had previously bought up to a quarter kilo of cocaine. He had access to amounts even larger than that, and, in fact, he cooked the powder cocaine into crack cocaine.
>
> Now, I want to give Your Honor just a little bit of an indication of how much money we're talking about here. A quarter kilo of powder cocaine in the D.C. area costs between $8,500 and $9,500. Well, once that's cooked into crack cocaine and divided into retail level distribution amounts, it can [be] value[d] up to $35,000.
>
> The defendant was a wholesaler. Even the amounts sold to the [confidential informant] here, the 60 grams, that's not a retail amount.

Sentencing Transcript 18:7-21. The government made a similar point in its sentencing memorandum. It concedes here that the source of the prosecutor's "wholesaler" statement was information King-Gore supplied during the debriefing.

After hearing from both the government and the defendant, the district court began its review of the 18 U.S.C. § 3553(a) factors. The court started by discussing the seriousness of the offense. The court concluded

> [T]he offense itself here is pretty serious because the quantities were large, and as the Government argues legitimately, Mr. King-Gore was a wholesale

trafficker, not just a retail trafficker in drugs, which means that he was quite generous in trafficking with almost anybody, and, therefore, spreading the pain of drug use throughout the community. That means it's a serious offense and suggests a higher sentence.

Sentencing Transcript 26:12-19.

As is clear from our summary, King-Gore's record—the 60-gram sale and the pattern of sales and possession—shows him to have been dealing drugs, and in substantial quantities. But whether one characterizes those activities as wholesale or retail, the quarter kilo invoked by government counsel is a good deal further from the retail end of the spectrum, and closer to the wholesale end, than what is reflected in the record.

\* \* \*

Given the government's concession that there was a clear breach, we follow it in focusing on the question of prejudice. But the context—an "error" of which the district court presumably was not and could not have been aware—calls for a brief discussion of the requirement that "the legal error must be clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135.

Typically, a plain error (as determined by the appellate court) will also have been obvious to the trial court; hence the usual construction: "the district court plainly erred." But to use such a phrase where the district court had no ready way of knowing of the error is a bit anomalous. Yet plain error is said to have occurred in such cases, with some frequency, typically because the obviousness of an error is evaluated at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 269 (2013); *United States v. Bostick*, 791 F.3d 127, 149 (D.C. Cir. 2015). In *Henderson*, the Supreme Court held that an

appellate court should find plain error even where a district court's ruling became obviously wrong only after the district court had ruled, in light of developments that later clarified an unsettled question of law. 568 U.S. at 273.

Just as a district court judge should not be blamed for failing to predict an about-face or similar twist in the law, see *Johnson v. United States*, 520 U.S. 461, 467-68 (1997), the district court judge here is not to be faulted for considering information that she did not know had been improperly sourced from a debriefing session. But that does not mean we cannot also find the plain error standard satisfied. As the Supreme Court recognized in *Henderson*, the "plain-error review is not a grading system for trial judges"; it serves other "broader purposes," including "fairness and judicial integrity." 568 U.S. at 278.

Although post-trial legal developments appear to be the most usual context for finding an error to have been clear even though the trial judge had no basis for discerning it, courts have applied the same practice to government breaches of its agreements. In *United States v. Dawson*, 587 F.3d 640 (4th Cir. 2009), the court observed explicitly that the issue had not been "in any way brought to the attention of the district court," *id*. at 644, but nonetheless found clear error. At least two other decisions have found obvious errors in such breaches with no apparent indication that the trial judge could have been aware that the government had breached an agreement. *United States v. Puckett*, 505 F.3d 377, 386 (5th Cir. 2007), *aff'd*, 556 U.S. 129 (2009); *United States v. Fant*, 974 F.2d 559, 564-65 (4th Cir. 1992). We do the same here.

We thus return to the question of whether King-Gore has been prejudiced by the government's breach. In the sentencing context, the plain error standard "requires only that the defendant 'show a reasonable likelihood' that the sentencing

court's plain error 'affected his sentence.'" *United States v. Bigley*, 786 F.3d 11, 15 (D.C. Cir. 2015) (citations omitted). Although the burden is on the defendant to show this reasonable likelihood, the standard "is somewhat more relaxed in the area of sentencing than it is for trial errors, since 'a resentencing is nowhere near as costly or as chancy an event as a trial.'" *In re Sealed Case*, 573 F.3d 844, 852 (D.C. Cir. 2009); see also *United States v. Saro*, 24 F.3d 283, 287-88 (D.C. Cir. 1994).

The government directs us to evidence in the record— other than material from the debriefing—that could have served as the basis for the district court's conclusion that King-Gore was a "wholesale trafficker" deserving of a "higher sentence." Sentencing Transcript 26:11-19. Indeed, the district court observed that the offense of conviction itself was "pretty serious because the quantities were large," a factor the government says contributed to its finding that King-Gore was a wholesaler. *Id*. at 26:12-14. The government emphasizes, as it did at the sentencing, that King-Gore was also recorded offering to sell the confidential informant larger quantities and to set up other deals.

But the district court's use of the "wholesaler" moniker appears traceable to the government's language. The court said that, "as the Government argues legitimately, Mr. King-Gore was a wholesale trafficker, not just a retail trafficker in drugs." *Id*. at 26:14-16. And the government had supported its use of the term by reference to an event that lacks any basis in the record—a quarter-kilo transaction, which the government dramatized by its account of the sale's potential street value. As we recognized above, the amounts sold to the confidential informant can be characterized as more than retail; indeed the prosecutor did so, saying that they were "not a retail amount." *Id*. at 18:19-21. But the quarter kilo alluded to without record support would be four times greater, so that the weight of the

government's wholesaler argument, and the court's apparent acceptance of it, seem to derive from the government's breach of its promise.

At sentencing, the court also referred to King-Gore's criminal history and to the severe consequences of his illegal dealing. These references may be taken two ways: either as showing that there was plenty besides sheer volume to justify a substantial sentence, or, especially when considered with the court's forceful phrasing of the points, as reflecting a likelihood that the government's breach moved the needle toward severity. We recount them both.

The district court described King-Gore's criminal history as a "critical" factor and referred to his drug dealing as his "career lifestyle." *Id*. at 5:9-15; 8:6-17. The judge highlighted that, on the heels of more than seven years in jail for his two prior convictions, King-Gore was right "back to it" dealing drugs. *Id*. at 8:13-17. The judge stated that, while she had opted not to apply the career offender guideline in other cases, she was "much more troubled here because it seems to me that . . . since [King-Gore] was in college, from then till now, he's either in jail or he's drug dealing." *Id*. at 7:23-8:5.

Throughout the sentencing, the district court also emphasized the dangerous consequences of King-Gore's conduct. The judge said that drug dealing "really is painful for other people. It really visits pain on other people, adults, and even more particularly children, and so it's not a victimless crime." *Id*. at 27:15-18. The judge took note of the fact that King-Gore was "from this community, he knows this community, he knows the pain of drug dealing" to others. *Id*. at 27:20-24. "To protect the public from further crimes," the district court judge found that a sentence higher than the mandatory minimum was necessary. *Id*. at 27:25-28:2.

The government asks us to find that the record therefore "shows ample independent evidence" for the district court to conclude that King-Gore "deserved a higher sentence." We agree that there was evidence justifying a substantial sentence or a "higher" one than the 60 months King-Gore recommended. But the "question isn't whether defendant's prison term would have been drastically shorter—just whether it was reasonably likely that the prison term would not have been as long had the district court considered only permissible factors." *In re Sealed Case*, 573 F.3d at 852.

We believe that there is at least a reasonable likelihood that King-Gore received a higher sentence than he would have absent the government's breach.

Having found the third factor satisfied, we turn our attention to the fourth. As we have previously held, this prong is ordinarily satisfied where the error, "if left uncorrected, would result in a defendant serving a longer sentence." *Id*. at 853. That is the case here. Because "[w]e cannot say that keeping defendant in prison longer for improper reasons would leave the fairness, integrity, and public reputation of judicial proceedings unscathed," *id*., we find the fourth prong established.

Thus we remand for resentencing. Having reviewed the three factors outlined in *United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997), we remand to a different district court judge. We recognize that as is typical in these cases, any judge imposing a sentence after these proceedings will be aware of information that he or she is required to disregard—a challenging mental exercise at best. But we think that here it would be unfair to put the initial sentencing judge in a position where any decision might be mistakenly credited to her prior involvement—either as failure to put the improperly sourced statements out of her mind or bending over backwards to make

clear that she has done so. We reiterate "that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Although King-Gore asserts additional errors, they do not require discussion in a published opinion.

\* \* \*

In accordance with this opinion, the sentence is vacated and the case is remanded for resentencing.

*So ordered.*