# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 15, 2017        Decided July 31, 2018

No. 17-3006

UNITED STATES OF AMERICA,
APPELLEE

v.

MARQUETE MURRAY, ALSO KNOWN AS TWIN, ALSO KNOWN AS
QUETE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00121-8)

*Gregory Stuart Smith*, appointed by the court, argued the cause and filed the briefs for appellant.

*Eric S. Nguyen*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: GARLAND, *Chief Judge*, and SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:   Appellant Marquete Murray challenges the sentence that the district court imposed following his guilty plea.   Murray's appeal presents two questions: whether the government's actions following entry of the plea breached its plea agreement with Murray, and whether Murray's counsel provided constitutionally ineffective assistance in relation to that claimed breach.

We reject the government's contention that it did not breach its plea agreement with Murray.   Nevertheless, because Murray's counsel failed to object, we can grant Murray relief on this ground only if the government's breach was plain -- that is, clear or obvious -- which it was not.   That, however, does not end this matter.   Because we also reject the government's contention that Murray has no colorable claim of ineffective assistance of counsel, we remand the case to the district court for further proceedings.

I

The root problem in this case is that Murray was sentenced based on a U.S. Sentencing Guidelines range that deviated from the estimated range set out in his plea agreement -- despite the fact that nothing unanticipated by the agreement transpired between the plea and sentencing.   This is how that came to pass.

On July 14, 2016, a federal grand jury indicted Murray on a narcotics conspiracy charge, as well as on a second charge of unlawfully using a communication facility to facilitate drug crimes.   On October 16, with advice of counsel, Murray entered into a plea agreement with the Office of the U.S. Attorney for the District of Columbia, pursuant to which he would plead guilty in federal court to the conspiracy count, and would also plead guilty to two other charges in two unrelated cases in the Superior Court of the District of Columbia:   misdemeanor

assault and carrying a pistol without a license.[1] In exchange, the government agreed, among other things, to dismiss the remaining count in the federal indictment, the remaining count in the misdemeanor assault case, and a third D.C. Superior Court case in its entirety.

The plea agreement included an agreed-upon "Estimated Guidelines Range," meant "to assist the Court in determining the appropriate sentence." Plea Agreement ¶ 4 (J.A. 24). The parties calculated Murray's initial base offense level as 20 because the conspiracy offense involved approximately 30 grams of heroin and 45 grams of PCP. *See* U.S.S.G. § 2D1.1(c)(10) & cmt. 8(B). The parties then applied a three-level reduction that lowered Murray's offense level to 17 based on his acceptance of responsibility. *See id*. § 3E1.1. The plea agreement also stated the parties' agreement that Murray's estimated criminal history category was Category I:

> Based upon the information now available to [the U.S. Attorney's] Office, your client [Murray] has no criminal convictions.
>
> Accordingly, your client is estimated to have 0 criminal history points and your client's Criminal History Category is estimated to be I. Your client acknowledges that if additional convictions are discovered during the pre-sentence investigation by the United States Probation Office, your client's criminal history points may increase.

---

[1] The U.S. Attorney for the District of Columbia acts as chief prosecutor in both the U.S. District Court for the District of Columbia and in the Superior Court of the District of Columbia. *See United States v. Weathers*, 186 F.3d 948, 949 n.1 (D.C. Cir. 1999).

Plea Agreement ¶ 4.B (J.A. 26).  Based on the estimated offense level and criminal history category, the parties agreed that Murray's Estimated Guidelines Range was 24 to 30 months' incarceration.  *Id.* ¶ 4.C (J.A. 26).

The agreement further stated that Murray understood the Estimated Guidelines Range was not binding on the United States Probation Office or the sentencing court.  And it warned that any post-agreement misconduct that Murray committed could increase his base offense level or justify an upward departure.  *Id.* (J.A. 27).

Finally, although the parties agreed that a sentence within the Estimated Guidelines Range "would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)," both parties "reserve[d] the right to seek a sentence" outside "the Estimated Guidelines Range based on § 3553(a) factors."  *Id.* ¶ 5 (J.A. 27).[2]

---

[2] After calculating the applicable Guidelines range, "the court must then consider the arguments of the parties and the seven sentencing factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence, including whether a variance from the advisory Guidelines range is warranted."  *United States v. Williams*, 773 F.3d 98, 108 (D.C. Cir. 2014).  The § 3553(a) factors include the (now advisory) range established by the Guidelines.  *See* 18 U.S.C. § 3553(a)(4).  They also include such factors as "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); the need for the sentence to "reflect the seriousness of the offense," to "promote respect for the law," to "provide just punishment," to "afford adequate deterrence," to "protect the public," and to "provide the defendant with needed educational or vocational training," *id.* § 3553(a)(2); and the need to "avoid unwarranted sentence disparities" among similarly situated defendants, *id.* § 3553(a)(6).  *See United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005).

On October 25, 2016, Murray pled guilty in federal court pursuant to the plea agreement. Three weeks later, on November 17, he entered the two Superior Court pleas required by the plea agreement.

On December 1, 2016, the Probation Office released a Presentence Investigation Report (PSR) regarding Murray.[3] The PSR concluded, as had the plea agreement, that Murray's offense level was 17. PSR ¶¶ 65, 103. But in calculating Murray's criminal history category, it did not conclude -- as the agreement did -- that Murray's criminal history score was 0. Instead, it gave Murray a score of 2 because "the defendant pled guilty to two District of Columbia Superior Court cases following his guilty plea" in federal court. PSR ¶ 109.

The two Superior Court pleas were the same pleas that Murray's plea agreement had required. With some exceptions not relevant here, when a defendant has previously pled guilty but not yet been sentenced, one point is added to his criminal history for each such plea. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(4). The Probation Office therefore concluded that Murray's criminal history score was in fact 2 -- not 0 as in the plea agreement -- which placed him in Criminal History Category II, rather than in Category I as contemplated by the agreement. As a result, the Probation Office calculated a final sentencing range of 27 to 33 months' incarceration, PSR ¶ 103, rather than the agreement's Estimated Guidelines Range of 24 to 30 months. *See* U.S.S.G. ch. 5, pt. A (sentencing table). Both

---

[3] The PSR was filed under seal. "Insofar as we refer to information derived from the PSR, it is unsealed to the limited extent referenced in this opinion, although the full document shall remain physically withheld from public review." *United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

government and defense counsel reviewed the PSR; neither noted any material inaccuracies. *See* PSR addendum.

The PSR also identified "the defendant's youth" -- he was 24 years old at the time of sentencing -- as a "factor that may warrant a [downward] variance from the applicable guideline[s] range." PSR ¶ 130. Subsequently, the Probation Office recommended a 21-month sentence to the court. *See* Sentencing Hearing Tr. 10 (J.A. 80).

Following the Probation Office's report, each party submitted a sentencing memorandum to the court. The government affirmed the PSR's Sentencing Guidelines range of 27 to 33 months. It did not mention the plea agreement's estimated range of 24 to 30 months, nor did it call to the court's attention the fact that the difference in ranges was due to counting, for criminal history purposes, the Superior Court convictions resulting from the plea agreement. Finally, based on the § 3553(a) factors, the government asked the court to sentence Murray to the top of the (new) range: 33 months. *See* Government's Mem. in Aid of Sentencing 8-13 (J.A. 42-47).

Murray's counsel submitted a short sentencing memorandum as well. Like the government's memorandum, Murray's did not call the court's attention to the difference between the plea agreement's Estimated Guidelines Range and the PSR calculation. Instead, defense counsel merely cited Murray's youth and need for further education and vocational training as support for a variance below the sentencing range -- specifically, a sentence of 24 months. Def. Murray's Sentencing Mem. 1-2 (J.A. 48-49).

The sentencing hearing took place on January 6, 2017. The court began by explaining its Sentencing Guidelines calculations. It noted that, at the time of the plea, Murray had no

previous criminal convictions but had since pled guilty in two D.C. Superior Court cases. Sentencing Hearing Tr. 6 (J.A. 76). Based on those two pleas, the court calculated that Murray had two criminal history points, which put him in Criminal History Category II. *Id.* With an offense level of 17 and a Category II criminal history, the court (like the PSR) calculated the Sentencing Guidelines range as 27 to 33 months. *Id.* When asked whether that range was correct, both the government and Murray's attorney agreed that it was. *Id.* at 6-7 (J.A. 76-77).

After noting the Probation Office's recommendation of 21 months' imprisonment, the court invited the government to speak. Following an extended allocution, the government repeated the 33-month recommendation it had presented in its sentencing memorandum.

Murray's counsel then addressed the court. He did not note that the new sentencing range exceeded the plea agreement's Estimated Guidelines Range, nor did he object to the government's recommendation on the ground that it was above that range. Instead, counsel rested on his previously filed memorandum requesting a downward variance of 24 months' incarceration. Sentencing Hearing Tr. 32 (J.A. 102). Having heard from both parties, the court accepted the government's recommendation and sentenced Murray to 33 months in prison.

Following the sentencing, Murray's lawyer moved to withdraw. The lawyer explained that, in a post-sentencing meeting, Murray "became upset at Counsel's low-key approach at the Sentencing Hearing, and expressed his displeasure." Mot. for Withdrawal of Counsel 2 (J.A. 67). Appellate counsel was

contacted on January 25, 2017, and Murray filed this appeal the same day.[4]

Murray raises two contentions on appeal. First, he asserts that the government breached the plea agreement between the parties, and that he is therefore entitled to resentencing. Second, he argues that his trial counsel provided constitutionally ineffective assistance in relation to that breach.

II

"In interpreting the terms of a plea agreement, we look to principles of contract law. In evaluating whether a plea agreement has been breached, we look to the reasonable understanding of the parties and construe any ambiguities in the agreement against the government." *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) (citations omitted). But because Murray raises his claim of breach for the first time on appeal, we can review it only for plain error. *See Puckett v. United States*, 556 U.S. 129, 134 (2009); *United States v. King-Gore*, 875 F.3d 1141, 1144 (D.C. Cir. 2017). Meeting that standard requires satisfying four prongs: "First, there must be an error or defect . . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, . . . the error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (citations and internal quotation marks omitted).

---

[4] In its brief, the government challenged Murray's appeal as untimely, but it has since waived that challenge by letter to the court.

Murray contends that the government breached the plea agreement in two ways. First, he says that the parties understood that the Estimated Guidelines Range would be the actual Guidelines range at sentencing, unless he committed further criminal conduct or unless the government discovered prior convictions that it did not know about. Because the conduct underlying the Superior Court pleas occurred prior to the agreement and was known to the government, Murray maintains that both parties understood those pleas would not count towards his criminal history category. As a consequence, he concludes, the government breached the agreement by failing to schedule the pleas to take place after his federal sentencing so as not to affect his Guidelines range at the time of that sentencing. Second, Murray contends that, after the government failed to make that scheduling arrangement, it breached the agreement again by arguing for a 33-month sentence, which exceeded the agreed-upon Estimated Guidelines Range of 24 to 30 months.

On each point, we hold that Murray's is the best reading of the agreement but that his reading is not so clear or obvious as to prevail under the plain error standard.

A

We begin with Murray's contention that the government breached the agreement by failing to schedule his Superior Court pleas to follow his federal sentencing.

1. Looking to the reasonable understanding of the parties and construing any ambiguities against the government, we conclude that Murray is correct: the best reading of the agreement is that the parties understood the Estimated Guidelines Range would be the final Guidelines range at sentencing, absent any material changes in the known

circumstances. Consequently, it was also reasonably understood that the Superior Court pleas would not count towards Murray's criminal history category.

There is no dispute that, at the time of the agreement, Murray had no criminal convictions. Nor is there any dispute that, when the two pleas were counted, they increased Murray's criminal history score and category, and thus his Guidelines range, above the numbers "estimated" in the plea agreement. His score increased from 0 to 2, and his criminal history category from I to II. Instead of a Guidelines range of 24 to 30 months, this made his range 27 to 33 months.

It is true, as the government says, that the "agreement repeatedly made clear that the projected guidelines range was only an estimate and could change before sentencing." U.S. Br. 14. But it is also true that both parties knew Murray would soon plead to the Superior Court charges as required by the plea agreement. Thus, if those Superior Court pleas had been expected to increase the Guidelines calculations, there would have been no reason to include in the plea agreement three "estimates" that the parties knew would be wrong by the time of sentencing.

Indeed, the purpose of including an estimated Guidelines range in a plea agreement is to predict, for the benefit of both the defendant and the government, the range that will be used at sentencing. *See United States v. Habbas*, 527 F.3d 266, 270 (2d Cir. 2008) (noting that estimated Guidelines ranges "ensure that guilty pleas indeed represent intelligent choices by defendants" (citation omitted)). And, as Murray's plea agreement says, its "Sentencing Guidelines Analysis" was intended "to assist the Court in determining the appropriate sentence." Plea Agreement ¶ 4 (J.A. 24). If the parties had known from the get-go that the Estimated Guidelines Range would be wrong at the time of the

sentencing, it would not have been of much assistance to the court -- or to the parties in deciding whether to enter into the plea agreement.

Other language in the plea agreement confirms this reading. The agreement states that, "[b]ased upon the information *now available to this Office*, your client has no criminal convictions," and that, as a consequence, "your client is estimated to have 0 criminal history points." Plea Agreement ¶ 4.B (J.A. 26) (emphasis added). It then goes on to say that "if additional convictions *are discovered* during the pre-sentence investigation" by the Probation Office, "your client's criminal history points may increase." *Id.* (emphasis added).

The "information now available" to the U.S. Attorney's Office included the fact that Murray would soon have two Superior Court convictions. Likewise, there was nothing to "discover" about those two convictions; the government knew full well that they were coming. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 357 (11th ed. 2009) (defining to "discover" as "to make known or visible"; "to obtain sight or knowledge of for the first time"; "find out"). Thus, it would be surprising if the plea agreement's reference to "information now available" excluded the upcoming convictions, and equally surprising if those convictions were included within the category of convictions that might be "discovered."

Moreover, such exclusion and inclusion could be viewed as misleading to Murray and hence in violation of the prosecutor's "implied obligation of good faith and fair dealing" in connection with plea agreements. *United States v. Ahn*, 231 F.3d 26, 35-36 (D.C. Cir. 2000) (quoting *United States v. Jones*, 58 F.3d 688, 692 (D.C. Cir. 1995)); *accord Henry*, 758 F.3d at 431. This is yet another reason to read the agreement as

including an understanding that those convictions would not affect Murray's Sentencing Guidelines range.[5]

2. The conclusion we have just reached leads to the further inference that the agreement contemplated that Murray would enter his Superior Court pleas *after* being sentenced in federal court. This follows because the Sentencing Guidelines provide that a defendant is assigned one criminal history point for each prior offense to which the defendant has pled guilty but not yet been sentenced. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(4).

That is what happened to Murray: at his federal sentencing, the court correctly gave him 2 criminal history points for his two Superior Court pleas, notwithstanding that he had not yet been sentenced on those pleas. Thus, if the understanding that those pleas would not count toward his Sentencing Guidelines range was to be honored, there also had to be an understanding that he would not enter his Superior Court pleas until after the federal sentencing was completed. The government breached this understanding by scheduling Murray's D.C. Superior Court pleas before his federal sentencing.

---

[5] Further support for our reading comes from the warning at the end of the section of the agreement entitled "Estimated Applicable Guidelines Range." That section opens by stating that, "[b]ased upon the agreed total offense level and the estimated criminal history category set forth above" -- the latter being Category I, based on 0 criminal history points -- "your client's estimated Sentencing Guidelines range is 24 months to 30 months." Plea Agreement ¶ 4.C (J.A. 26). The end of the section warns, however, that "the terms of this section apply only to conduct that occurred *before* the execution of this Agreement." *Id.* (J.A. 27) (emphasis added). The conduct underlying the two Superior Court convictions did in fact occur before the plea agreement was signed -- 8 months and 16 months before that date. *See* PSR ¶¶ 67-68.

The government rejects this conclusion on the ground that "[p]leading guilty to the other crimes was a condition of [Murray's] getting the benefits of the agreement." U.S. Br. 17. It reads the "Breach of Agreement" section, Plea Agreement ¶ 11 (J.A. 31-32), to suggest the parties intended that Murray perform all of his promises first. The government posits that this section gave it recourse at Murray's federal sentencing for any failure by Murray to fulfill his obligations, and therefore contemplated that he would complete all his obligations by that time. Recording of Oral Arg. 27:40.

The government's reading finds no support in the agreement's text. Murray certainly agreed to plead guilty to the Superior Court charges as part of the overall plea agreement. But although the agreement addressed the timing of the government's obligation to dismiss the remaining counts in each court vis-à-vis Murray's obligation to plead guilty in that court,[6] it said nothing about the sequencing of activity between the two courts. And we will not read into the agreement's silence on the issue of timing an implied condition favoring the government. *See Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) ("Conditions precedent are not readily assumed. While specific, talismanic words are not required, the law nevertheless demands that conditions precedent be expressed in unmistakable language." (internal quotation marks omitted)); 15 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 44:47 (4th ed. 1990). If anything, the plea agreement suggested the opposite by addressing the federal plea and sentencing first and the

---

[6] *See* Plea Agreement ¶ 3 (J.A. 24) (providing that, in consideration for the federal plea, the remaining federal count would be dismissed at the federal sentencing; and that after the Superior Court pleas, the government would move for dismissal of the remaining Superior Court counts at the Superior Court sentencing).

Superior Court pleas and sentencing second. *See* Plea Agreement ¶¶ 1, 3 (J.A. 23-24).

Despite this lack of textual support, the government insists that it "was entitled to know" that Murray would "h[o]ld up his end of the bargain before making its sentencing recommendation." U.S. Br. 17-18. That may be true, but Murray was equally entitled to know that the government would dismiss his remaining federal count in exchange for his pleading to the Superior Court counts. And Murray could not be assured of that dismissal until his federal sentencing. *See supra* note 6.

The government further argues that, if Murray had been permitted to wait until after the federal sentencing to plead to the Superior Court charges, and thereafter refused to plead, the government would have been without recourse. But the agreement contained many incentives for Murray to comply -- and many negative consequences if he did not. If Murray refused to plead to the two Superior Court charges, he could be tried on those charges, on the remaining Superior Court charges, possibly on the dismissed federal charge (depending on double jeopardy considerations), and possibly on other federal charges as well.[7] In addition, the government would be "free to use against" him all statements he had made to the government and to the court, including at his plea colloquy. Plea Agreement ¶ 11 (J.A. 31).

But the dispositive question is not whether the government could get all that it wanted in the event of a breach by Murray; the question is what the agreement provided. "[L]ook[ing] to

---

[7] *E.g.*, Plea Agreement ¶ 11 (J.A. 31) (providing that in the event of a breach of the agreement, Murray would "be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice").

the reasonable understanding of the parties and constru[ing] any ambiguities in the agreement against the government," *Henry*, 758 F.3d at 431, we conclude that Murray's plea agreement evidenced the understanding that his upcoming Superior Court pleas would not count towards his Sentencing Guidelines range at his federal sentencing, and hence that the two Superior Court pleas would be entered after that sentencing. By scheduling those pleas before his federal sentencing, the government breached that understanding.

3. Nevertheless, we cannot provide Murray with relief unless the breach constituted plain error because he did not object in the district court. *See Puckett*, 556 U.S. at 134; *King-Gore*, 875 F.3d at 1144. And to find plain error, it is not enough to base our reading on the parties' "reasonable understanding" and on "constru[ing] any ambiguities" against the government. *Henry*, 758 F.3d at 431. Rather, we must find that the breach was "clear or obvious." *Puckett*, 556 U.S. at 135. We cannot so find here.

Murray's assertion that the government breached the plea agreement by failing to effectuate the parties' understanding that his final criminal history category would not include the Superior Court pleas requires resolving two ambiguities (or, really, two silences): (1) the agreement does not expressly address whether the not-yet-entered pleas would affect his final criminal history category and Guidelines range, and (2) the agreement does not expressly address the expected timing of those pleas.

Although the first ambiguity alone might not be enough to render the agreement's expectations unclear, we cannot say the same for the second. Scheduling the pleas after the federal sentencing appears to have been the only way the Estimated Guidelines Range would have been a useful prediction. But that

timing was unmentioned in the agreement, and relies on an analysis of Guidelines provisions that are also unmentioned in the agreement. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(4). It is not at all obvious that the parties understood those provisions.

Yes, counsel for both parties should have been schooled in the relevant Guidelines. *See United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997); U.S. DEP'T OF JUSTICE, UNITED STATES ATTORNEYS' MANUAL § 9-27.710 cmt. (rev. 2018). And defense counsel's failure to understand them may be part of the ineffective assistance claim we address below. But the question before us is what the parties clearly agreed to, not what they should have agreed to in order to effectuate their unspoken understanding. And -- notwithstanding our conclusion above that Murray's is the best reading of the agreement -- we cannot say that his position is so obvious as to grant him relief.

There is also another, factual issue that makes the error less than obvious. It is one that we passed over in our prior discussion, but that we cannot simply assume in evaluating the plain error question. That is: who actually scheduled the Superior Court pleas and federal sentencing hearing, and who had the power to change their timing? The record does not reflect whether the government scheduled the proceedings on its own, whether the prosecutor and defense counsel found mutually agreeable dates, whether the designated courts set the dates based on their own calendars, or whether either court would have been amenable to a scheduling change if asked. The absence of a factual record that resolves at least some of these matters is yet another factor leaving Murray's claim of a government breach less than plain.

B

We next address Murray's argument that the government further breached the plea agreement by recommending that the court sentence him to 33 months' incarceration.

1. Murray argues that, even if the government could not have avoided scheduling the Superior Court pleas before the federal sentencing, or inadvertently did so, it still could have avoided breaching the agreement by recommending a sentence of no more than 30 months. That sentence would have fallen within the final 27-to-33-month range but also would have been consistent with the 24-to-30-month range contemplated by the plea agreement. We agree that, under the best reading of the agreement, the government's 33-month recommendation constituted a breach.

The government maintains that, "[e]ven if the parties did not realize that the two separate guilty pleas . . . would increase the applicable guidelines range, . . . the agreement expressly [reserved the government's right] to seek a sentence above the estimated range." U.S. Br. 8. It is true that, under the plea agreement, Murray "reserve[d] the right to seek a sentence below the Estimated Guidelines Range . . . and the Government reserve[d] the right to seek a sentence above the Estimated Guidelines Range[,] based on § 3553(a) factors." Plea Agreement ¶ 5 (J.A. 27). But that reservation was more qualified than the government acknowledges.

The below- or above-Guidelines sentence referenced in the plea agreement is known as a "variance."[8] "[T]o sustain an

---

[8] A "variance" refers to a non-Guidelines sentence imposed "*outside the guidelines framework*" based on the applicable factors in 18 U.S.C. § 3553(a) taken as a whole. U.S.S.G. § 1B1.1 cmt.

upward variance, the district court . . . 'must state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by th[e] [relevant Sentencing Guidelines] range.'" *United States v. Brown*, 892 F.3d 385, 404 (D.C. Cir. 2018) (quoting *United States v. Brown*, 808 F.3d 865, 867 (D.C. Cir. 2015)); *see United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017) ("A judge imposing an above-Guidelines sentence must offer in court, and in writing, a specific reason why the defendant's case calls for a more severe sentence than other cases falling within the same Guidelines categories." (internal quotation marks omitted)).

In recommending a 33-month sentence, the government did not say that it was seeking a variance. Nor did it provide the court with reasons that would support the imposition of a variance. *See* Government's Mem. in Aid of Sentencing 8-13 (J.A. 42-47); Sentencing Hearing Tr. 13-29 (J.A. 83-99). It did not once attempt "to distinguish [Murray's] case from others falling into the same Guidelines categories." *Brown*, 857 F.3d at 405. It did not tell the court why "the Guidelines 'do not *fully*' capture the egregiousness of th[e] defendant's conduct." *Id.* at 406 (quoting *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014)). It did not make that argument about the Estimated Guidelines Range, as to which it reserved the right to

---

background (emphasis added) (citing *Irizarry v. United States*, 553 U.S. 708, 709-16 (2008)). A "departure" refers to a "non-Guidelines sentence[] imposed *under the framework set out in the Guidelines. . . .* based on the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Irizarry*, 553 U.S. at 714 (emphasis added) (internal quotation marks omitted); *see* U.S.S.G. § 1B1.1(b) & cmt. 1(E). Because the plea agreement stipulated that neither party would seek a "departure," Plea Agreement ¶ 4.C (J.A. 26-27), the reservation of the right to seek a below- or above-Guidelines range in Paragraph 5 of the agreement constituted the right to seek a variance.

seek a variance. It did not even make that argument about the final Guidelines range calculated by the district court.

Instead, the government simply gave the court a variety of reasons for sentencing Murray at the top of the final sentencing range. *See, e.g.*, Sentencing Hearing Tr. 14-15 (J.A. 84-85) (positing that the 30 grams of heroin "could have potentially reached, if it was sold not to informants, many, many individuals on the street"); *id.* at 16 (J.A. 86) (calculating that the 45 grams of PCP could have yielded "$1,600 in profit"); *id.* at 17 (J.A. 87) (citing Murray's "very keen knowledge of how illegal narcotics are sold").[9] Although those reasons track § 3553(a) factors, *see supra* note 2 (describing the factors), that alone did not indicate that the government was seeking a variance. The courts use the same factors to determine the appropriate sentence within a Guidelines range and to determine whether an above-Guidelines sentence is appropriate. *See Brown*, 857 F.3d at 406; *United States v. Williams*, 773 F.3d 98, 108 (D.C. Cir. 2014).

As we have explained, the 33-month sentence that the government recommended was within the range only because the Superior Court pleas had been included in the final Guidelines calculation -- contrary to the understanding reflected in the plea agreement. But asking for a sentence that the government claimed was within the range was not the same as asking for a variance. In so doing, the government did not

---

[9] *See also* Sentencing Hearing Tr. 17 (J.A. 87) (saying, "we're very concerned" because "[w]e don't know if [Murray] realizes how serious his involvement is"); *id.* at 17-18 (J.A. 87-88) (arguing that Murray was "infecting our community with illegal drugs that can . . . dramatically change individuals' lives"); *id.* at 22 (J.A. 92) (agreeing with Murray's grandmother that he "needs to stop hanging around the streets, and he needs to . . . get away from that bad crowd").

exercise its reservation but rather breached its agreement. *See United States v. Palladino*, 347 F.3d 29, 34 (2d Cir. 2003) (concluding that, in light of an estimated Guidelines range accompanied by similar "based upon information now known to the Office" language in the plea agreement, the "defendant had a reasonable expectation that the Government would not press the Court for an enhanced offense level in the absence of new information"); *see also United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992) (stating that Supreme Court precedent "prohibits not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them" (internal quotation marks omitted)).

2. Notwithstanding this conclusion, we cannot say that our reading of the plea agreement is sufficiently clear or obvious so as to qualify Murray for relief. The agreement does not expressly say that the government must seek a "variance," nor does it explain the kind of reasons the government would need to assert to obtain a variance. It merely says that "the Government reserves the right to seek a sentence above the Estimated Guidelines Range based on § 3553(a) factors." Plea Agreement ¶ 5 (J.A. 27). And that is literally what the government did, basing its request for an above-Guidelines sentence on reasons that tracked § 3553(a) factors. *See supra* Part II.B.1 (noting that the § 3553(a) factors are relevant to recommendations for sentences both inside and outside the calculated Guidelines range).

Given that the sentencing court correctly calculated a 27-to-33-month final range, the government's 33-month recommendation was within the Sentencing Guidelines range, and did not technically require a variance. And even if it did, it is only when the government's reservation is placed in the context of the legal requirements for a variance that we find it more reasonable to read the reservation as restricted to seeking

an above-Guidelines sentence on the ground that "the defendant's case calls for a more severe sentence than other cases falling within the same Guidelines categories" -- i.e., on the ground that a variance is warranted. *Brown*, 857 F.3d at 405. Therefore, it is not clear or obvious that the agreement limited the government to showing a variance was warranted in order to request an above-the-range sentence.

C

In sum, we conclude that the government breached its plea agreement with appellant Murray. But Murray did not object to the breaches in the district court, and we therefore cannot provide him with relief because the breaches were not plain. Although Murray's interpretation of the agreement's ambiguous language is the best one, we cannot say that the breaches should "have been obvious to the trial court." *King-Gore*, 875 F.3d at 1145; *see Puckett*, 556 U.S. at 135.

III

Murray also contends that his district court counsel was constitutionally ineffective. In order to succeed on this claim, Murray must show: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *United States v. Rashad*, 331 F.3d 908 (D.C. Cir. 2003), we explained this circuit's approach to ineffective assistance claims that are first raised on appeal:

> Due to the fact-intensive nature of the *Strickland* inquiry and the likelihood, when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record, this court's general practice is to remand

the claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief.

*Id.* at 909-10 (citation and internal quotation marks omitted). In short, all that is required for a remand is "a colorable and previously unexplored claim of ineffective assistance." *Id.* at 908; *see, e.g.*, *United States v. Gray-Burriss*, 791 F.3d 50, 64 (D.C. Cir. 2015).

The government insists that Murray has failed to establish a colorable claim of ineffective assistance of counsel, and hence that a remand is unwarranted. We disagree. We address the two prongs of the *Strickland* test below.

A

The first, "deficiency" prong of *Strickland* requires a showing that the lawyer's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Murray has a colorable claim that his counsel's representation fell below that standard.

As discussed above, our best reading of the plea agreement is that the parties expected that, absent a change in material facts, the Estimated Guidelines Range would be the final Guidelines range that Murray would face at sentencing -- notwithstanding his required Superior Court pleas -- and hence that his attorney should have delayed his Superior Court pleas (if that were possible) until after his federal plea. Murray claims, moreover, that his attorney made no "attempts at all to delay [his] D.C. Superior Court pleas." Murray Br. 4.

That constitutes a colorable claim of deficient performance. This circuit has held that a failure by defense counsel to seek a

delay in sentencing can be objectively unreasonable, and therefore constitutionally deficient, in light of the reasonably likely benefits of doing so. *United States v. Abney*, 812 F.3d 1079, 1088 (D.C. Cir. 2016). But the facts relevant to this claim -- including what counsel told Murray about the nature of the plea agreement -- are not part of the trial record. *See Rashad*, 331 F.3d at 911. To put them on record, Murray likely will have to testify, question his former counsel, and possibly question the prosecutor as well. Accordingly, if there is also a colorable claim of prejudice -- a question we address below -- a remand to resolve this issue is required.

Murray also claims that his counsel was deficient because he failed to object when the prosecutor recommended a sentence (33 months) that was above the 30-month ceiling of the Estimated Guidelines Range. Even if counsel could not have engineered a change in the sequencing of the pleas and the sentencing, Murray argues that he should have objected to the 33-month sentence and alerted the district court that the recommendation breached the plea agreement.

This, too, is a colorable claim of deficient performance. Under our best reading of the plea agreement, counsel had an obligation to object when the prosecutor breached that agreement by making a recommendation above the Estimated Guidelines Range without seeking a variance. He certainly had time to do so. The government submitted its memorandum more than a month before sentencing. Counsel could have raised the issue in his own memorandum or at sentencing. Instead, counsel's sentencing argument was, as his own motion for withdrawal characterized it, "low-key." Counsel's memorandum was bare bones, referring in cursory fashion to Murray's youth and need for further education. At the sentencing hearing, counsel then rested on that memorandum, making no mention of the sentencing range to which the parties

had agreed. Indeed, when the court asked Murray's counsel if he wanted to provide any explanation for the conduct underlying the Superior Court pleas, counsel declined. Sentencing Hearing Tr. 32-34 (J.A. 102-04).

Once again, however, this deficiency claim rests on facts -- including the nature of counsel's advice during plea bargaining -- that are not part of the trial record. And so, once again, a remand will be required if Murray also has a colorable claim of prejudice.

B

To satisfy the second *Strickland* prong, Murray must show "that the deficient performance prejudiced" him. 466 U.S. at 687. The prejudice that Murray alleges is an inappropriately high sentence. *See* Murray Br. 18.[10] To establish prejudice in the sentencing context, a defendant need only show a "reasonable probability that, but for counsel's unprofessional errors, the result of [sentencing] would have been different." *See United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004) (citation omitted); *accord Campbell v. Smith*, 770 F.3d 540, 549 (D.C. Cir. 2014) (applying this standard to claim that counsel provided ineffective assistance of counsel by failing to object to the government's breach at sentencing). "The question isn't whether [Murray's] prison term would have been drastically shorter -- just whether it was reasonably likely that the prison term would not have been as long . . . ." *In re Sealed Case*, 573 F.3d 844, 852 (D.C. Cir. 2009).

---

[10] At oral argument, Murray's appellate counsel advised, for the first time, that he "reserve[d] the right" to argue for vacatur of the plea agreement on remand. Recording of Oral Arg. 8:40. We leave that issue for the district court to address.

The government insists that, even if Murray's counsel performed deficiently, he cannot show his mistakes made any difference to the outcome of the case. As the government accurately recounts, the district court correctly determined that Murray faced a Guidelines range of 27 to 33 months (as a consequence of the two Superior Court pleas), understood that Murray had a "relatively minimal criminal history," Sentencing Hearing Tr. 37 (J.A. 107), and found Murray's to be a "particularly difficult sentencing because Mr. Murray is such a young man," *id.* at 35 (J.A. 105). "But notwithstanding [his] young age," the court told Murray:

> I've concluded that the appropriate sentence in this case is at the high end of the sentencing guidelines range of 33 months. And I've done that both because of the concern about safety of the community . . . . But also because it's my sincere, sincere hope that coming down on that side here with you now . . . will send you the message that you need for your life. Because I can tell you that I agree with [the government] that if this doesn't do it . . . . I really have grave doubts about the rest of your life.

*Id.* at 37-38 (J.A. 107-08); *see also id.* at 35 (J.A. 105) (admonishing Murray that "heroin and PCP are both particularly dangerous and destructive drugs"). Against that background, the government contends that no "additional arguments about the guidelines or appellant's guilty pleas would have persuaded the court to impose a lower sentence." U.S. Br. 24. Again, we disagree.

First, we must back up to Murray's first colorable claim of deficient performance: counsel's failure to insist that the Superior Court pleas be scheduled after the federal sentencing. Had those pleas not yet taken place at the time of the sentencing,

the 27-to-33-month range would not have been correct. Instead, the Estimated Guidelines Range of 24 to 30 months would have been correct, and a 33-month sentence would have required a variance -- a disposition that the government did not request and that the court did not indicate it would accept. *See* Sentencing Hearing Tr. 39 (J.A. 109) (statement by the district court judge that "I'm not going to vary or depart upward . . . I will stay within the sentencing guidelines"). Because "in most cases the Guidelines range will affect the sentence," *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1349 (2016), the prospect that effective performance would have put Murray's 33-month sentence above the Guidelines range is sufficient to establish a reasonable probability of prejudice. *Cf. id.* (holding that "a defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range").

Murray's second colorable claim of deficient performance likewise yields a colorable claim of prejudice. Even if the final sentencing range ended up at 27 to 33 months, there is at least a "reasonable likelihood," *United States v. Mohammed*, 693 F.3d 193, 204 (D.C. Cir. 2012), that a timely objection to the prosecutor's 33-month recommendation would have yielded a lower prison term. It is true, as the government says, that the district court fully and adequately explained the 33-month sentence at which it arrived. But it did so on the basis of a recommendation by the prosecutor that it deemed "helpful." Sentencing Hearing Tr. 32 (J.A. 102). The court was not advised that, in reaching their plea agreement, the parties assumed that 30 months was the top of the range that Murray would face, even with the Superior Court pleas. Nor was the court advised that the prosecutor was breaching that agreement by recommending 33 months.

Had the court known these things, it might well have considered a lower sentence. Even if the final sentencing range had been 27 to 33 months (because of the two Superior Court pleas), the court could still have effectuated the parties' understanding by sentencing Murray to between 27 and 30 months, which would have fallen within both the Estimated Guidelines Range and the final range. It might have done so by recognizing, as Murray urges, that his final sentencing range had increased beyond what the plea agreement contemplated "simply because he had done what it required, apparently based solely on the serendipity of his D.C. Superior Court plea dates." Murray Br. 17. This possibility is particularly reasonable given the Probation Office's recommendation that Murray be sentenced to only 21 months, Sentencing Hearing Tr. 10 (J.A. 80), and the court's acknowledgment that this was "a particularly difficult sentencing," *id.* at 35 (J.A. 105).

In any event, all that is required to satisfy the second *Strickland* prong is a "reasonable likelihood" that the court would impose a sentence lower than 33 months, and all that is required for a *Rashad* remand is that this possibility be "colorable." *Mohammed*, 693 F.3d at 204. "At this stage, [Murray] need not prove actual prejudice, but merely show that the record does not 'conclusively establish[] that he could not do so if given the chance.'" *Id.* (quoting *Rashad*, 331 F.3d at 912). He has done so.

IV

For the foregoing reasons, although we conclude that the government breached its plea agreement with the appellant, we cannot vacate his sentence because the error was not plain. We can and do, however, remand Murray's ineffective assistance claim for further proceedings in the district court because Murray has raised a colorable claim of ineffective assistance.

*So ordered.*